## POTTER v. BEAL et al.

(Circuit Court of Appeals, First Circuit.　June 11, 1892.)

No. 20.

1. APPEALABLE ORDERS—FINALITY OF DECREE—HOW DETERMINED.
    The question whether a decree is final and appealable is not determined by the name which the court below gives it, but is to be decided by the appellate court on a consideration of the essence of what is done by the decree.

2. APPEAL—REVIEW—MODIFICATION OF JUDGMENT—CIRCUIT COURT OF APPEALS.
    On appeal from a final decree the circuit court of appeals has authority to go beyond a mere reversal, and enter such a decree as should have been rendered by the court below on the whole case, as shown by the record; and it is its duty to review all interlocutory proceedings, of every character, to which seasonable objection has been made and insisted upon.

3. APPEALABLE ORDER—INSPECTION OF PRIVATE PAPERS—FINAL DISPOSITION.
    A national bank president, against whom an indictment was pending for violating the banking laws, brought a bill against the receiver of the bank to obtain possession of a trunk alleged to contain private papers. To this proceeding the United States district attorney was made a party defendant on his own petition, for the purpose of claiming the papers, in order that they might be laid before the grand jury. After hearing, a decree was made appointing a special master to make a private examination of the trunk, with directions to turn over to the complainant any papers belonging to him, and to the receiver such papers as belonged to the bank, and were not material to the prosecution against the president, and to reserve for further consideration such as concerned bank transactions, and were material to the prosecution. Held that, in so far as the decree directed papers to be turned over to the president and the receiver, it was final and appealable, since such papers might thus pass entirely beyond control of the other party claiming them.

4. EQUITY—PARTIES—PRODUCTION OF PAPERS.
    It was improper to make the district attorney a party defendant for the purpose of procuring the papers to be laid before the grand jury. The proper course was for him to obtain a *subpœna duces tecum* from the court in which the investigation was pending, and then to make summary application to the court which had impounded the papers.

5. CONSTITUTIONAL LAW—UNREASONABLE SEARCH—INSPECTION OF PRIVATE PAPERS.
    Under the circumstances, the order made by the court for an examination of the papers by a special master was in violation of the fundamental and constitutional rights of the litigants as to the method of trial.

6. SAME—METHOD OF EXAMINATION.
    It appearing that before the bill was brought, the trunk had been opened by consent of the president of the bank and the receiver, and certain papers taken out in the presence of third persons, one of whom thereby obtained some knowledge of its contents, it was in the power of the court to ascertain by private examination the nature of the evidence thus to be had, and, if it proved *prima facie* admissible, to allow public testimony thereof to be given.

Appeal from the Circuit Court of the United States for the District of Massachusetts. Reversed.

In Equity. Bill by Asa P. Potter, president of the Maverick National Bank of Boston, against Thomas P. Beal, receiver thereof. Complainant alleges, in substance, that he deposited in the vaults of the bank certain personal and private papers, books, and documents, which were never the property of the bank, and that some of the papers were then in a trunk, to which he held the key; that the trunk was in the vault when the bank was closed by order of the comptroller, and that the receiver has since held it, and refused to pass it to the plaintiff; that the papers are personal in their nature, and necessary to a settlement of his private affairs; that he is charged with violations of the law, and that the government attorney is about to issue a summons calling the receiver before the grand jury with the papers in question; that he is

without adequate remedy at law, and therefore seeks the interposition of equity. The relief sought is (1) an order that the books, papers, and other documents be delivered to plaintiff; (2) that defendant Beal be enjoined from using the same before the grand jury; and (3) such other relief as may be just.

At a preliminary hearing Frank D. Allen, the United States district attorney, appeared on behalf of the government. At this hearing, which was merely on the evidence contained in the sworn bill, the prayer for a preliminary injunction was denied, and the receiver was directed to lodge the trunk with the clerk of the court, who was ordered to keep the same in its then condition until otherwise ordered. Afterwards the district attorney, on his own petition, and against plaintiff's objection, was made a party defendant, and filed a motion that the trunk be opened and delivered to the government and the grand jury, in order that all material evidence therein contained might be used in the investigation. The receiver thereafter filed his answer, alleging that the trunk came into his possession as a part of the assets of the bank; that he is advised and believes that it is his duty to examine its contents, and ascertain whether it contains property of the bank, or memoranda, books, papers, or accounts concerning its affairs. Whereupon plaintiff asked for a further hearing, that evidence might be introduced as to the nature of his possession. This hearing was had February 23, 1892, and plaintiff called one Work, a cashier, whose evidence tended to show that the trunk was kept in the bank, and not elsewhere, as the private trunk of Mr. Potter, but the witness had no knowledge of its contents; that Mr. Potter and one Kellogg, the clerk of the bank, and a secretary to Mr. Potter, and no other persons, had access to the trunk. Neither Mr. Potter nor Kellogg was called as a witness. It appeared also that the trunk, while in possession of the receiver, was opened several times by agreement, and there were taken out certain insurance policies on Mr. Potter's house, as well as certain deeds of Florida lands which one Hanson held in trust as security to certain notes held by the bank. At these times Mr. Edward W. Hutchins, counsel for the receiver, was present. He was called as witness by plaintiff, and on cross-examination stated that he then saw into the trunk, and obtained some knowledge of its contents. He was then asked to state what were some of its contents, but the question was objected to and ruled out, and he was allowed to make no statement of its contents, though he testified that on those occasions he, as well as the receiver, took part in the examination of the trunk without any objection, so far as he knew. After the conclusion of this hearing, on February 25, 1892, the court delivered an opinion, which is reported in 49 Fed. Rep. 793, and made the following order:

" With a view of ascertaining the rights of the parties to this bill in a manner not unreasonable and not in conflict with the provisions of the constitution, it is ordered that Hon. John Lowell, of Boston, be, and he hereby is, appointed master to examine the contents of the trunk referred to in said bill. That Mr. Howe, of counsel, pass the key to the clerk of this court,

and that the clerk open the trunk in the presence of the master and no other person; and that, after examination by the master, in the presence of no one, such papers, documents, and other things, if any, as are the property of the Maverick Bank, and are not material to the issue suggested in the motion of the district attorney in this matter, after being first shown to the plaintiff, be delivered to the defendant Beal by the clerk. *Second.* That such, if any, as are private, and are not the property of the Maverick Bank, together with such as do relate to Maverick Bank transactions, and are necessary and material to be introduced by Mr. Potter in his own behalf, be forthwith delivered to his counsel, Mr. Howe. *Third.* That such, if any, not included in the clauses above, as relate to Maverick Bank transactions, and in the judgment of the master are or may be material to the issue suggested in said motion of the district attorney and the proper presentment of the government's case, be sealed, returned to the trunk and the safe custody of the clerk, and that the clerk relock the trunk in the presence of the master, return the key to Mr. Howe, and hold the trunk and such contents until further directed. That the master, without further characterization, report whether or not he finds papers and documents within the classes named, and what disposition has been made thereof. The examination contemplated by this order is to be considered as part of the preliminary hearing, or, in other words, in aid thereof, and is designed to enable the parties to lay evidence before the court in a private and reasonable manner, the nature of the case being such that it would be unreasonable to ask or permit it to be done in a public manner. Upon report, the parties will be further heard as to the proper use and disposition of such, if any, papers and other things as are material to the government's case. The examination herein provided for is to be private, and no publicity whatever is to be given to it except such as is conveyed through the report of the master, of the character indicated. Before the examination contemplated by this order, the parties and their counsel may, in the presence of each other, or separately, if they so agree, make such explanation to the master as they desire as to the character of the papers, and until such examination and report, or until the foregoing order is vacated or modified, all parties are strictly enjoined from interfering in any way with the trunk or its contents."

From this order, plaintiff took the present appeal.

*Henry D. Hyde*, *M. F. Dickinson, Jr.*, and *Elmer P. Howe*, for appellant.

*Edward W. Hutchins*, *Henry Wheeler*, and *Frank D. Allen*, for defendant Beal.

*Frank D. Allen*, U. S. Atty., *pro se*.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. The order of the circuit court provides that, without proof, and without hearing the parties, except the explanation authorized by it, the master shall make a secret, private examination of the contents of the trunk in question in this case; not for informing the court or counsel, but for distribution. He is directed to divide the contents into three parts, delivering one to complainant, one to the original defendant, Beal, and returning the third into court for the purpose of further consideration. This so clearly violates the constitutional and fundamental rights of litigants as to the method of trial, that it is to be presumed the learned judge who entered the order had reason to understand it would be accepted by all interested as a matter of convenience; though to provide for all contingencies, he, both in his opin-

ion and by a special order, reserved the rights of all parties till they could be passed on by this court.

The first question which meets us is whether this appeal shall be regarded as from an injunction granted by an interlocutory order under the seventh section of the act establishing this court, or whether it is to be taken hold of as from a final decree. The record states that the order was preliminary; but, of course, this is not effectual, as it is for this court, and not for the circuit court, to determine that question in all cases, and the determination is to be governed by the essence of what is done, and not by the appellation given to it. If this is to be regarded as an appeal under the seventh section, there might yet be some matters concerning which this court could take jurisdiction, as, for instance, the fact that the injunction order holds the papers after they pass from the custody of the court; but it may be doubted whether we can be given jurisdiction by an injunction entered under color for that purpose, or by one purely nominal, concurrent with proceedings before a master, or the appointment of a receiver, or the impounding of papers or moneys pending litigation, if as effectual without the injunction as with it. The power of the circuit court to control proceedings before a master, or to make effective a receivership, or in impounding papers or moneys, is in the main ample, both theoretically and practically, without any injunction; and if, in such case, we should dissolve a superfluous injunction, we may be permitted to touch only the surface, and required to leave unaffected the substance of the order appealed from. As, however, the order in this suit places a part, and perhaps the whole, of the contents of this trunk absolutely beyond the control of the court, it seems to dispose of a part or the whole of the matter in controversy so effectually that we are forced to accept as a final decree so much as directs a distribution, notwithstanding the difficulty of determining, as between cases apparently analogous, on which side of the line this at bar properly falls, in accordance with the practice and principles of the supreme court. It seems to us the case is more akin to *Forgay* v. *Conrad*, 6 How. 201, *Thomson* v. *Dean*, 7 Wall. 342, *Railroad Co.* v. *Bradleys*, Id. 575, *Hill* v. *Railroad Co.*, 140 U. S. 52, 11 Sup. Ct. Rep. 690, and *Grant* v. *Railroad Co.*, 50 Fed. Rep. 795, than to *Pulliam* v. *Christian*, 6 How. 209, or *U. S.* v. *Girault*, 11 How. 22. In *Barnard* v. *Gibson*, 7 How. 650, *Forgay* v. *Conrad*, *supra*, was referred to, and distinguished from the ordinary cases with reference to the right of appeal from a decree for an injunction in patent causes before the master's accounts are taken. It was also cited with apparent approval in *Hill* v. *Railroad Co.*, *supra*. Inasmuch as in the case at bar the papers which may be delivered the complainant, or the original defendant, under the order appealed from, may go effectually beyond the control of the other party claiming them, or even be destroyed, before an appeal can be taken to this court from any decree which entirely disposes of the suit, the necessity of our taking jurisdiction is as apparent as it was in any of the cases cited, or in *Farmers' Loan & Trust Co., Petitioner*, 129 U. S. 206, 9 Sup. Ct. Rep. 265. Therefore we conclude to hold the appeal as one from a final decree, with reference to so much of

the order as directs distribution to the complainant and the defendant Beal of any part of the contents of the trunk.

We have no doubt that when this court properly takes jurisdiction on appeal from a final decree it has power to go beyond a mere reversal, and to enter such decree as should have been entered by the court below on the whole case as appearing in the record; nor have we any doubt that it is likewise its duty to review all the interlocutory proceedings of every character, using the term in the largest sense, with reference to which objections have been seasonably made and insisted on. Therefore we consider first the order of the court below making the attorney of the United States for the district of Massachusetts a party defendant. In accordance with the broad principles of *Florida* v. *Georgia*, 17 How. 478, we presume the United States would generally be allowed to intervene summarily; or by a supplemental information or bill, for protecting property rights involved in a pending suit in equity; but in this case the petition of the district attorney, asking to be made a party, does not state the grounds on which he bases it. It is gathered from the record at various points that his purpose is to reach for use in criminal proceedings certain papers said to be in the trunk in controversy. For such purpose we think the proper course was for him to obtain at the outset a *subpœna duces tecum* from the court where the criminal proceedings were pending, to be framed in accordance with the rules of criminal procedure, and thereafterwards to make summary application to the court which had impounded the papers covered by the subpœna. We are unable to see that, for any purpose connected with criminal proceedings, it was necessary or proper that the attorney of the United States be made a party to the pending bill, or that the law authorizes him to thus prejudice either the original parties to the suit or the United States. These suggestions, however, we will leave for further consideration in the event the necessity therefor arises, holding for the present that, in the absence of a subpœna or other alleged specific right, the attorney of the United States has no standing in this suit.

So far as shown by the record the title of the complainant to the trunk and its contents is clear, and no facts were proven which suggest the contrary, or which are sufficient to authorize the court to defeat at the outset his presumed purpose in bringing this bill, namely, to obtain the trunk and its contents free from public or private inspection, as is his right if the same are his property. We are unable, however, to enter on this account a decree for the complainant, by reason of the exclusion by the court below of the testimony of Edward W. Hutchins as to the nature of the papers which he had inspected. Whether or not this evidence, if admitted, would have overcome in any particular the facts now shown by the record, we, of course, have no method of determining. Nor can we determine whether the evidence should have been admitted; nor have we the jurisdiction to direct in detail what course the circuit court should pursue for the purpose of ascertaining whether or not it is admissible. It is enough for us to say that, as evidence was offered which, if admitted, might possibly have shown that the com-

plainant was not entitled to the entire contents of the trunk, and was rejected in such way that the record does not disclose the nature of the proposed proof, we are unable to enter a decree dismissing the bill; and to say also that the question of the admission of this evidence is to be determined primarily by the circuit court as all like matters are disposed of. It is for the judge of the circuit court to ascertain by private examination of the witnesses, or in such other way as the rules of law permit, whether or not the evidence is *prima facie* admissible; and if he is satisfied that it is, we know of no rule of law which debars the defendant of his right to prove facts relevant to the case by Mr. Hutchins, if the complainant has, either purposely or unguardedly, permitted Mr. Hutchins to so far inspect the contents of the trunk as to know what it contains in any part. In short, we know of no rule of law which, so far as concerns the admission of the testimony offered, differs from that applicable to causes in general; with reference to all which the court will always see to it that private transactions are not unnecessarily exposed to the public gaze, though it will not shrink from permitting them to go into the record when the necessities of justice require it. We do not hold that it is not, in proper cases, within the power of the chancellor to substitute in lieu of himself a suitable master or referee for the purpose of ascertaining *prima facie* whether or not testimony offered is entitled to be heard; but we do hold that, on the state of this record, without some proof beyond what is here disclosed, the court should not inspect, nor permit an inspection of, the contents of the trunk, either private or public, and thus perhaps defeat the very purpose of the bill. We draw a broad distinction between the right of the circuit court to pass on the admissibility of the testimony of Mr. Hutchins, offered and ruled out, and to determine this preliminary question privately, and its right, on the other hand, to order an inspection of the contents of the trunk, either private or public; and we limit this distinction to the case as shown, without undertaking to deny that there are possibilities that, under some circumstances, an inspection may become necessary for the ends of justice. An inspection, however, if ever ordered, should be only in cases of real necessity, when the other proofs make it clear that private rights cannot be determined without it; nor should it be made without positive evidence that there are papers of doubtful ownership, nor without some evidence of their identity and character. No inspection should be permitted, in suits of this character, merely because the defendant is unable to prove his case without it, nor because of mere doubts, suspicions, or suggestions, nor, as we repeat, except there is a clear emergency demanding it. It is true that in a limited sense the party who seeks the aid of equity to obtain possession of private papers submits himself to the court; and yet it is to be remembered that the main object of going into equity may be, not to obtain the papers themselves, but to secure the privacy to which the owner of them is entitled, and which he may not be able to protect except with the aid of the chancellor; and it is not permissible that the chancellor should defeat at the outset—unless under extreme circumstances—any portion of the relief

which the complainant seeks, and which, perhaps, may be more effectually denied by permitting the privacy of his papers to be violated than by any refusal to give possession of them.

The rules laid down by us are in harmony with those applied to proceedings for production of private papers in suits in equity, or in proceedings at law under Rev. St. § 724; for either of which it is necessary to show, not only that specific papers exist and are in the possession of the party against whom the order is asked, but also that they are pertinent to the issue. The record in this case fails in all these particulars. The secrets of the party against whom an order of production may run are so well preserved by the law that he seems to be at liberty to seal up such portions as he is willing to make affidavit are privileged or irrelevant. The form of such affidavits appears in Seton, Decrees, (4th Ed.) 136, (10.) When the affidavit contains statements at variance with each other, or the documents, so far as made known, show a discrepancy, the practice seems to be that the court may get at the truth by compelling a discovery, and, if necessary for that purpose, may unseal the documents and examine them. It is said, however, that this exception to the general rule does not apply when the affidavit is merely suspected, or "even if open to every possible suspicion." *Bowes* v. *Fernie*, 3 Mylne & C. 632. Coming closer to the case at bar, it is said that interlocutory production and inspection will not be ordered on the motion of a plaintiff in equity, if in this way he would practically obtain the object of his bill. This was so ruled by Sir JOHN LEACH in *Lingen* v. *Simpson*, 6 Madd, 290. This case is explained in *Chichester* v. *Marquis of Donegal*, 4 Ch. App. 416–419, where it was said that the production would have enabled the plaintiff to have gotten a great portion of the custom of the defendant, and thus to have accomplished on an interlocutory order the main purpose of the suit. In the case at bar the bill alleges that the contents of the trunk are "private property," and "personal in their nature;" and the prayer is that the defendant may be enjoined from permitting the papers to be inspected, and that also, pending the prosecution of the suit, he may be enjoined "from showing them, or any of them, or allowing them, or any of them, to be inspected." Therefore to permit an inspection, as ordered by the circuit court, would perhaps defeat the purpose of the bill as effectually as the production asked and refused in *Lingen* v. *Simpson, supra*. These principles and cases relating to the ordinary practice concerning production of private papers are not brought in here as strictly applicable, but they illustrate the tenderness with which courts guard against unnecessary exposure.

The order admitting the attorney of the United States a party defendant is reversed, and his petition to be so admitted is dismissed, without costs, and without prejudice to any rights of him or the United States in any other proceeding. The order entered February 25, 1892, appointing a master, is reversed, and the case is remanded for further proceedings in accordance with this opinion, so far as it appertains. The complainant recovers the costs of this appeal against the original defendant, Beal.