STANDLEY et al. v. ROBERTS, Sheriff, et al.

ATOKA COAL & MIN. CO. v. HODGES et al.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1894.)

Nos. 308 and 345.

1. APPEAL—FINAL DECREES—DISMISSAL OF INTERPLEADERS.
    Orders finally dismissing interpleaders from the suit, also dismissing an auxiliary petition brought by plaintiff to enjoin them from enforcing a judgment, and vacating an injunction previously granted thereunder, embody final decisions as to such interpleaders, and are appealable, although the suit between the original parties is still pending.

2. INTERPLEADER—WHEN APPLICABLE.
    A lessee who voluntarily takes an independent lease from each of two adverse claimants to real estate cannot, when sued by one of them for rent, compel the two to interplead, and litigate their conflicting titles and the validity of their respective leases.

3. SAME—WAIVER OF RIGHTS.
    One who has erroneously been compelled to interplead does not waive his right to be dismissed from the action by filing an amended answer after his motion to be dismissed on the pleadings has been denied and he has excepted thereto, since the order is not appealable, and no party should be held to waive his rights by respectfully obeying the orders of the court.

4. PARTIES—WHO MAY BE MADE DEFENDANTS.
    Under such circumstances the mutual rights subsisting between the lessee and each of his lessors are matters personal to themselves, in which the other lessor has no interest whatever; and hence the latter cannot be brought in as a defendant, under a statute giving power to make defend-

ants any person claiming an interest in the controversy adverse to plaintiff, or who is a necessary party to a complete determination of the questions involved. Mansf. Dig. Ark. § 4940.

**5. COURTS—ENJOINING ACTIONS.**

In an action on a lease, to recover royalties, where jurisdiction is acquired by personal service on defendant, the court acquires no possession or jurisdiction over the demised premises, whereby it would have authority to enjoin a third party from enforcing a decree, obtained in another court, quieting his title to the premises as against the present plaintiff.

**6. JUDGMENTS—INDIAN COURTS—FAITH AND CREDIT.**

The judgments of the courts of the Indian nations in the Indian Territory stand on the same footing with those of federal territorial courts, and are entitled to the same faith and credit.

## Appeal from the United States Court in the Indian Territory. Affirmed.

The laws of the Choctaw Nation, in the Indian Territory, provide that: "Any citizen of this nation who may find any mine or mines or mineral waters shall have the exclusive right and privilege to work the same as long as he may choose within one mile in any direction from his works or improvement; provided, however, that he does not interfere with the rights of the former settler." In 1887 James D. Davis, a citizen of the Choctaw Nation, claimed that he had discovered a mine, in 1872, in coal claim No. 6, in Atoka county, in the Choctaw Nation; but he had in fact made no such discovery. There is evidence in the record tending to show that Oliver Hebert, a citizen of that nation, discovered a mine in that claim about 1881, and that H. W. Adams, another citizen, discovered such a mine in May or June, 1887. Hebert died about 1885. About June 1, 1887, Davis agreed with H. W. Adams, John M. Hodges, H. Y. McBride, and McKee James, who owned mining claims 7, 8, 9, and 10, in that county, that the five parties should thereafter each own one-fifth of each of claims 6, 7, 8, 9, and 10. After this agreement was made, and after Adams had discovered the mine on No. 6, and had taken possession of it for his partners and himself, Davis agreed to sell the undivided three-fourths of coal claim No. 6 to Coleman E. Nelson, Thomas J. Phillips, and James S. Standley. October 1, 1887, Davis, Nelson, Standley, and Phillips leased to the Atoka Coal & Mining Company, the defendant below, for the term of 6 years, with the privilege of a term of 20 years more, the exclusive right of mining coal on coal claim No. 6; and the lessee promised to pay to Davis $25 a month until it commenced to mine, and thereafter to pay to the lessors one-quarter of a cent per bushel on all coal mined from the leased premises. After Davis had received $50 under this lease, the defendant notified him that these lessors had no coal to lease to it, and demanded the repayment of this money, and Davis paid it back. January 25, 1888, Adams, Davis, James, Hodges, and McBride leased the exclusive right to mine coal on claims 6, 7, 8, 9, and 10 to the defendant for a term of 20 years, and the lessee agreed to pay them one-quarter of a cent per bushel on all coal mined on these claims, and to pay the representatives of the Choctaw Nation one-half a cent per bushel on all such coal. June 1, 1888, Standley, Phillips, and Nelson made an agreement with the administratrix of the estate of Oliver Hebert as the representative of his heirs, to the effect that from thenceforth Davis, Nelson, Standley, and Phillips should own one half, and the heirs of Hebert the other half, of coal claim No. 6, and the rents due and to become due under the lease of October 1, 1887. August 5, 1889, Standley, Phillips, and the administratrix of the Hebert estate brought an action against the coal company on this lease for $300 rent. They joined Davis and Nelson as plaintiffs, but the latter repudiated this action, notified the court that the suit was brought without their knowledge, that they claimed nothing under that lease, and withdrew as plaintiffs. The defendant answered that it owed some one $300 for coal mined on the leased premises; that it had taken the two leases above mentioned; that the two sets of lessors claimed title adversely to each other, substantially as above set forth; that the defendant was induced to take the first lease by misrepresentation; that it was without

consideration and void; and that if it paid under it the lessors in the second lease would sue, and compel it to pay the rent under that lease also. Thereupon, on the defendant's motion, and without notice to them, Adams, James, Hodges, McBride, Nelson, and Davis, hereafter called the "interpleaders," were ordered by the court to interplead, and to set up any claim they had to coal claim No. 6, and the royalty on the coal mined or to be mined therefrom, or to be forever barred of any interest therein. November 13, 1890, they appeared generally, and answered in the action, but by answer, and by motion for their dismissal, seasonably and repeatedly objected that they were not proper parties to the action, and that the pleadings disclosed no facts requiring them to interplead. In July, 1891, the interpleaders James, Adams, Davis, Hodges, McBride, and B. F. Smallwood and John Frinzell, recovered a judgment in the circuit court of the Choctaw Nation, against Standley, Phillips, and the administratrix of the Hebert estate, to the effect that the former were the owners of coal claim No. 6, that the latter be restrained from interfering with their title thereto and royalties therefrom, and that they pay the plaintiffs in that action $25,000 damages. The action on which this judgment was based was commenced in July, 1891, and on appeal the judgment was affirmed by the supreme court of the Choctaw Nation. In September, 1891, the interpleaders filed a motion for their dismissal, and an amended answer, in which they pleaded that they were not parties to, and claimed nothing under, the plaintiffs' lease; that they owned mining claim No. 6; that the plaintiffs had no interest in it, and that the Choctaw court had so adjudged,—and they prayed to be dismissed, and that, if this prayer was denied, they might recover of the defendant the rent due them under their lease. February 9, 1892, their motion for dismissal was denied, and they excepted. May 4, 1892, Standley, Phillips, and the heirs of Oliver Hebert filed in this action an application for an injunction to restrain the interpleaders and the sheriff of Atoka county from enforcing by execution the judgment of the Choctaw court, and a temporary injunction issued. In the progress of the case, it had been transferred from the law to the equity docket, the heirs of Oliver Hebert had succeeded the administratrix of his estate, and all the parties had repeatedly amended their pleadings. The plaintiffs finally abandoned the discovery by Davis, pleaded as their source of title to the mine the discovery by Hebert and the one-fifth interest in the discovery by Adams, which they claimed to derive from the sale to them by Davis, and insisted that they were entitled to the rent under their lease. The defendant finally pleaded both leases, the conflicting claims of the respective lessors; that, if it paid its rent under the plaintiffs' lease, it might be liable to pay under the lease of the interpleaders, also,—and prayed that it might be permitted to pay the rents into court, and that the rights of the plaintiffs and the interpleaders to them and to the mine might be determined in this suit. The interpleaders, after the order was made denying their motion to be dismissed, filed a pleading in which they alleged their title to the mining claim under the discovery by Adams, the judgment of the Choctaw court quieting their title, and their lease to the defendant, and prayed that they might recover the rents due them under it, that the plaintiffs' lease might be canceled, and that the plaintiffs might be enjoined from interfering with the collection of their rents. April 22, 1893, after the testimony of all parties had been taken, the court below, on motion of the interpleaders, made an order dismissing them from the suit, and vacating the original order requiring them to interplead, and another order vacating the preliminary injunction and dismissing the petition for it. From these orders the plaintiffs and the defendant appeal.

N. B. Maxey, James M. Shackelford, and C. H. Kimball, (Thomas Marcum, S. S. Fears, H. O. Shepard, W. R. Shackelford, and A. A. Osgood, on the briefs,) for appellants.

John H. Rogers and G. G. Randell, (William J. Horton and James F. Read, on the brief,) for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

We are met at the threshold of this case by the objection that the order dismissing the interpleaders and the order dismissing the plaintiffs' auxiliary petition for an injunction and vacating the temporary injunction issued, while the action between the plaintiffs and the defendant remained pending, were not final decisions, and hence were not appealable to this court. The act creating the circuit courts of appeals provides:

"That the circuit courts of appeals established by this act shall exercise appellate jurisdiction to review by appeal or by writ of error final decision in the district court and the existing circuit courts in all cases other than those provided for in the preceding section of this act unless otherwise provided for by law." 26 Stat. c. 517, § 6; Supp. Rev. St. p. 903, § 6.

Section 7 of that act permits an appeal from an order granting or continuing an injunction, but, with this exception, no jurisdiction is given to this court to review any order, judgment, or decree made in the progress of a case, which does not embody a final decision. A case cannot be brought to this court piecemeal. An order, judgment, or decree which leaves the rights of the parties to the suit affected by it undetermined—one which does not substantially and completely determine the rights of the parties affected by it in that suit—is not reviewable here until a final decision is rendered, nor is an order retaining or dismissing parties defendant, who are charged to be jointly liable to the complainant in the suit, appealable. U. S. v. Girault, 11 How. 22, 32; Hohorst v. Packet Co., 148 U. S. 262, 263, 13 Sup. Ct. 590. But a final decision which completely determines the rights, in the suit in which it is rendered, of some of the parties who are not claimed to be jointly liable with those against whom the suit is retained, and a final decision which completely determines a collateral matter distinct from the general subject of litigation, and finally settles that controversy, is subject to review in this court by appeal or writ of error. In Withenbury v. U. S., 5 Wall. 819, several libels were filed for the condemnation, as prize of war, of large quantities of cotton and other property. These libels were consolidated, and various claims were interposed in the consolidated suit for portions of the property, and among them the claim of Withenbury & Doyle. An order was made dismissing this claim, with costs, while the suit remained pending and the cotton and its proceeds undisposed of. The supreme court held that this order was appealable, because it completely determined the whole matter in controversy between these claimants and the United States, and was final as to all the parties to that severable controversy. In Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, an order fixing the amount of the compensation of receivers in a suit to foreclose a mortgage on a railroad while the main suit was still pending was held by that court to be appealable, because it was final in its nature, and was made in a matter distinct from the general subject of litigation, a matter by itself, which affected only the parties to the particular controversy, and those whom they represented. In Hill v. Railroad Co., 140 U. S. 52, 11 Sup. Ct. 690, where

a suit was brought against several parties who were alleged to be interested more or less in certain contracts and transactions out of which the claim of the complainant arose, a decree dismissing the bill as to certain of the defendants, and ordering it to be retained for the purpose of determining the liability of certain other defendants for an amount of money due under a certain contract specifically named, was held to be appealable because it was final as to the defendants dismissed, and the controversy left was a severable matter, which did not concern them.  In Central Trust Co. v. Marietta & N. G. Ry. Co., 2 U. S. App. 1, 1 C. C. A. 116, 48 Fed. 850, the circuit court of appeals for the fifth circuit held that the decision of the court below on the petition of an intervener claiming certain locomotives and other railroad equipment then in the hands of a receiver that had been appointed in proceedings to foreclose a mortgage on a railroad was appealable, because it finally decided the rights of the parties to the controversy presented by the petition, although the main suit for the foreclosure of the mortgage still remained pending and undetermined.  In Grant v. Railroad Co., 2 U. S. App. 182, 1 C. C. A. 681, 50 Fed. 795, after a bill to foreclose a mortgage upon a railroad had been filed, and while the suit was pending, an auxiliary dependent bill against the complainant, the railroad company, and others, charging that certain bonds secured by the mortgage were invalid, was filed in that suit; and, upon hearing, the court entered a decree dismissing the auxiliary bill.  The circuit court of appeals of the fifth circuit held that decree appealable, because it finally disposed of the severable controversy presented by that bill, although the main suit was retained and referred to a master to ascertain the priority and validity of the liens on the mortgaged property, and to marshal the conflicting claims to the bonds.  See, also, Forgay v. Conrad, 6 How. 201, 204; Bronson v. Railroad Co., 2 Black, 524, 529; Thomson v. Dear, 7 Wall. 342, 345; Trustees v. Greenough, 105 U. S. 527; Potter v. Beal, 5 U. S. App. 49, 2 C. C. A. 60, 50 Fed. 860.

The orders dismissing the interpleaders from this suit, vacating the preliminary injunction, and dismissing the auxiliary petition of the plaintiffs for an injunction, finally and completely disposed of all the rights of the interpleaders against either the plaintiffs or the defendant in this suit, and all the rights of the plaintiffs or the defendant against the interpleaders herein.  They were therefore final decisions of the controversies between them in this suit, and properly appealable to this court.  The controversy which remained related entirely to the liability of the defendant to the plaintiffs upon the written lease of October 1, 1887, and that was a severable controversy between the plaintiffs and the defendant alone, the determination of which could not affect the interpleaders.

Can a lessee who has voluntarily taken an independent lease from each of two adverse claimants to the title of the same real estate, by establishing these facts, and bringing the amount due on one of the leases into court, compel his lessors to interplead, and litigate their conflicting titles and the validity of their leases, before either of them can receive his rent, and thereby exonerate himself from lia-

bility for the rent due on both the leases? This is the important question this case presents, on its merits. Other questions are presented, involving the jurisdiction of the court below over the subject-matter and the parties, and involving the regularity of its proceedings; but if that court had the power to take jurisdiction of the subject-matter in controversy, in a proper case, and if all the objections to the method it pursued in exercising that power are disregarded, the orders appealed from must still be affirmed, unless this question can be answered in the affirmative. If it cannot, the other questions become immaterial, and need not be considered. Adverse claimants of the same thing, debt, or duty from one who holds the thing or owes the debt or duty, and stands indifferent, and who has not colluded with, nor placed himself under any independent personal obligation to, any of them, may be compelled to interplead, and to obtain an adjudication of their conflicting claims, before any of them can recover the thing, or receive the proceeds of the debt or duty. Two rules regarding this subject are of universal application, where they have not been expressly abrogated by statute: First. No case for an interpleader can be made, unless the adverse claimants seek to recover the same thing, debt, or duty. Second. No case for an interpleader can be made where the holder or debtor has made an independent, personal agreement with some of the claimants regarding the subject-matter claimed, so that he is under a liability to them beyond that which arises from the title to the subject-matter. The statutes of Arkansas in force in the Indian Territory do not abrogate, but emphasize, these rules. They provide a summary method by which, where it appears "in any action upon contract or for the recovery of personal property that some third party, without collusion with him (the defendant), has or makes a claim to the subject of the action, and that he is ready to pay or dispose thereof as the court may direct," the court may order that the third party shall appear and maintain or relinquish his claim against the defendant. Mansf. Dig. Ark. § 4947. Statutes of this character are in force in England and in many of the states, and are universally held to introduce no new cause of interpleader. St. 1 & 2 Wm. IV. c. 58; Belcher v. Smith, 9 Bing. 82; Pustet v. Flannelly, 60 How. Pr. 67, 69; Johnson v. Maxey, 43 Ala. 521, 541. In Belcher v. Smith, supra,—a case which arose under an English statute much more comprehensive than the Arkansas statute before us,—the court declared that "our duty is to see that the party applying for the exercise of our discretion has not voluntarily put himself into the situation from which he calls on the court to extricate him."

The reason for, and the necessity of a strict enforcement of, the second rule is obvious. Parties claiming title to the thing in dispute ought not to be, and cannot properly be, compelled to litigate any rights but those in controversy between themselves. If the holder of the subject-matter in dispute has placed himself under an independent personal obligation to one or more of the claimants, by which his liability to deliver the thing or pay the debt in question may be determined without a decision of the

controversy between the claimants, it is plain that no litigation between the latter can ascertain the rights of the holder or debtor upon his personal obligation. Nor does the fact that the latter claims that his personal agreement was obtained by the fraud or misrepresentation of the obligees relieve the embarrassment, or except the case from this rule. The question presented by such a claim arises entirely between the parties to the personal obligation of the holder or debtor. It is nothing to the other claimants, nor are they interested in, or proper parties to, the litigation over it. It would be a monstrous proposition that one who makes agreements with two persons to sell and deliver the same article to each of them could bring the article into court, and compel the two purchasers to litigate the question which had the better right to the thing, before either could recover it of him, or that a tenant of an owner could take a second lease of the same premises from one claiming title to them, and then compel the real owner and the pretended owner to litigate, not only the title to the premises, but the validity of the leases the tenant himself had taken, before either lessor could recover his rent. If such a proposition could be sustained, any tenant might treat his landlord to as many lawsuits as he could obtain leases of his premises. To sustain the case for an interpleader presented by the record before us would not be less unreasonable. The lease of October 1, 1887, was signed and accepted by the defendant. On its face, it is a valid contract. The defendant is estopped to deny its landlord's title, and is liable to pay the rent reserved in it, whether the lessors were owners of the mine or not. It is true that the lease may be avoided for fraud, misrepresentation, or mistake, but the validity of this lease is a question entirely between the plaintiffs and their lessee. The interpleaders are not parties to it. The validity or invalidity of it is nothing to them, and the lessee cannot compel them to fight a battle with the plaintiffs that is exclusively its own. That the interpleader Davis was originally a party to the first lease is immaterial, because he and the defendant both repudiated it before this action was commenced, and he has never claimed anything under it. The lease of February 25, 1888, from the interpleaders, is likewise a conclusive answer to this case. The defendant signed and accepted that lease. Prima facie, it entitles the interpleaders to the rent reserved in it, whether they owned the mine or not. The lessee is in possession, and cannot dispute its landlord's title. And the court had no right to order these interpleaders, as a condition of holding and enforcing the lease, to plead and establish, not only the validity of that lease against their tenant, but also their title to the mine as against the plaintiffs, and the invalidity of the plaintiffs' lease. They were entitled to their rent regardless of the decision of the two latter questions, if their lease was valid as against the defendant. These independent personal obligations of the defendant to the adverse claimants to this mine make it impossible for it to present any case for an interpleader here. If it has fallen into a pit of its own digging, the courts cannot make the interpleaders its substitutes.

Cook v. Earl of Rosslyn, 1 Giff. 167; Crawshay v. Thornton, 2 Mylne & C. 1, 17; Marvin v. Ellwood, 11 Paige, 365, 370; Dodd v. Bellows, 29 N. J. Eq. 127; Crane v. Bruntrager, 1 Cart. (Ind.) 165, 169; Canal Co v. Comegys, 2 Cart. (Ind.) 469, 472, 473; Snodgrass v. Butler, 54 Miss. 45, 49; 2 Story, Eq. Jur. § 812.

Moreover, the plaintiffs and the interpleaders do not claim to recover the same debt from the defendant. If A. makes one promissory note for $500, dated October 1, 1890, payable to the order of B. and C. 6 months from its date, and another, for the same amount, dated January 25, 1891, payable to the order of B. and D. 20 months from its date, and the respective payees sue the makers on their respective notes, it is absurd to say that B. and C. claim to recover of A. the same debt as do B. and D. The case here presented is yet stronger for the interpleaders. The plaintiffs claim to recover a debt which the defendant promised to pay to Davis, Standley, Phillips, and Nelson by the lease of October 1, 1887, for the term of 6 years, with a privilege of 20 years more. If the interpleaders claimed, by assignment or otherwise, to recover any part of the debt due under that lease, there would be a proper case for an interpleader. But they do not. Davis and Nelson both repudiated that lease, and expressly disclaimed any rights under or interest in it. The only claim of the interpleaders is that the defendant owes them rent due under the lease to Adams, Davis, James, Hodges, and McBride, dated January 25, 1888, for a term of 20 years from that date. Thus the plaintiffs and interpleaders respectively claim to recover of the defendant no part of the same debt, but two independent debts arising under independent leases, of different dates and different terms, payable to different lessors.

Nor can the interpleaders be held as parties defendant to this action under the Arkansas statute in force in the Indian Territory, which provides that:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination of the questions involved in the action." Mansf. Dig. Ark. § 4940.

The only controversy it is necessary to decide in order to determine the action between the plaintiffs and the defendant is that over the validity of the lease of October 1, 1887, between them. In that controversy the interpleaders neither have nor claim any interest. It can be, and in fact it must be, completely determined in an action between the plaintiffs and the defendant, because they are the only parties interested in the question. Its decision in the action between them cannot in any way determine or affect the rights of the interpleaders against the defendant, or of the defendant against the interpleaders, under the lease between them of January 25, 1888, or the rights of the plaintiffs and the interpleaders against each other to the title to the mine, and hence the latter are neither necessary nor proper parties to the plaintiffs' action on their lease.

It is insisted that the interpleaders have waived their right to be dismissed from this action on the ground that no case for an interpleader has been established against them, because they appeared, answered, moved to change the venue of the action, to transfer it to the equity calendar, and after their motion to be dismissed on the pleadings was denied, and they had excepted, they filed an amended answer, in which they prayed for affirmative relief. But this position is clearly untenable. It may be conceded that the interpleaders, by their general appearance and answer, waived all objections to the method by which they were brought into court, but the reason for their dismissal here lies deeper. It is that no case against them was ever pleaded or proved. On that ground they moved for a dismissal on the pleadings, while the first prayer of their answer was that they might be dismissed. Their motion was erroneously denied. They excepted, and then filed an amended answer, in which they asked the relief which the court had erroneously ordered them to seek in this action or to forever lose. That order was not appealable, and no litigant ought to be held to have waived any of his rights because he has quietly and respectfully obeyed such an order of the court after taking his exception. Harkness v. Hyde, 98 U. S. 476, 479; Pacific Co. v. Denton, 13 Sup. Ct. 44, 46; Railway Co. v. Pinkney, Id. 859. When the evidence had all been taken the interpleaders waived their claim for affirmative relief, which they had made under the protest of their exception, and moved the court to vacate the erroneous orders it had made, compelling them to interplead, and to dismiss them from the suit because no case had been either pleaded or proved against them. This motion was well grounded in law and in fact. In our opinion the interpleaders had not waived their right to urge it, and it was properly granted.

The conclusion at which we have arrived also disposes of the appeal from the order dismissing the auxiliary petition for an injunction and vacating the preliminary writ. The only ground on which the injunction was sought in that petition was that in July, 1891, while this suit was pending between the plaintiffs, the defendant, and the interpleaders, the latter and B. F. Smallwood and John Frinzell brought an action against the plaintiffs in the circuit court of the Choctaw Nation to quiet their title to coal claim No. 6, and the royalties from it, and to recover $25,000 damages because the plaintiffs had illegally interfered with the mine, and prevented them from using it and collecting their royalties; that they had recovered the judgment they sought, and were enforcing it by levying an execution on certain cattle of some of the plaintiffs. There is no doubt that, in suits in which the court obtains jurisdiction by the seizure or control of the subject-matter of the suit, the court which first acquires jurisdiction over it may retain the property in its custody until final judgment, and in many cases until such judgment is satisfied, and that it may use its writ of injunction, or other proper process, to effect this result. Gates v. Bucki, 4 C. C. A. 116, 125, 53 Fed. 961, and authorities cited. It is equally well settled that the pendency of an action in one court will not bar or abate another action between the same parties, involving the same issues, in a

court of co-ordinate jurisdiction, in which that jurisdiction is exercised, not by seizure of the property, but by personal service of original process upon the defendants. Stanton v. Embrey, 93 U. S. 548, 554, and cases cited. The jurisdiction of the court in the Choctaw Nation was exercised solely by personal service of its process on the defendants in that suit. The parties to this action in the Choctaw court were all citizens of that nation, and there is no doubt that the Choctaw court had jurisdiction of the subject-matter and the parties to that action. The act of May 2, 1890, (26 Stat. 81, c. 182,) entitled "An act to provide a temporary government for the territory of Oklahoma, to enlarge the jurisdiction of the United States court in the Indian Territory, and for other purposes," provides, by its thirtieth section, "that the judicial tribunals of the Indian nations shall retain exclusive jurisdiction in all civil and criminal cases arising in the territory in which members of the nation by nativity or by adoption shall be the only parties;" and, this court has held that the judgments of the courts of these nations, in cases within their jurisdiction, stand on the same footing with those of the courts of the territories of the Union and are entitled to the same faith and credit. Mehlin v. Ice, 5 C. C. A. 403, 56 Fed. 12. See, also, In re Mayfield, 141 U. S. 107, 115, 11 Sup. Ct. 939.

The plaintiffs insist that under the act entitled "An act to establish a United States court in the Indian Territory, and for other purposes," (approved March 1, 1889,) which provides, in section 6, "that all laws having the effect to prevent the Cherokee, Choctaw, Creek, Chickasaw, and Seminole Nations or either of them from lawfully entering into leases or contracts for mining coal for a period not exceeding ten years are hereby repealed, and said court shall have jurisdiction over all controversies arising out of said mining leases or contracts, and of all questions of mining rights or invasions thereof where the amount involved exceeds the sum of one hundred dollars," (25 Stat. 783, c. 333, § 6,) the court below had co-ordinate jurisdiction with the Choctaw court to determine the questions presented in that court. It is unnecessary to decide that question. If we admit—and we do not decide—this proposition, and if we concede that the petition for an injunction might lawfully be retained, and the preliminary injunction sustained, as long as the court below continued erroneously to hold that a case was presented in that court which enabled it to hear and determine the issues raised in the Choctaw court, yet it was the right and the duty of that court to dissolve the injunction and dismiss the petition as soon as it became advised that no case had been or could be presented in this suit in which it could decide those questions. This it has done, and the orders appealed from are affirmed, with costs.