## THE ATTUALITA.

(Circuit Court of Appeals, Fourth Circuit, October 6, 1916.) No. 1479.

1. ADMIRALTY ☞103—APPEALABLE DECREE.

A decree in a suit in rem, which releases the vessel, leaving nothing upon which the court can take further action, is in effect a final decree, and appealable.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 712–719; Dec. Dig. ☞103.]

2. COURTS ☞405(5)—CIRCUIT COURT OF APPEALS—JURISDICTION.

A decree of a District Court, releasing a vessel from arrest under a libel in rem on the ground that 'the vessel was employed in the service of a foreign nation and for reasons of comity, does not involve a question of the jurisdiction of the court, and an appeal lies to the Circuit Court of Appeals.

. [Ed. Note.—For other cases, see Courts, Cent. Dig. § 1099; Dec. Dig. ☞405(5).]

3. ADMIRALTY ☞5—LIABILITY OF VESSELS—TORTS—EMPLOYMENT BY FOREIGN GOVERNMENT.

A merchant vessel, which has been requisitioned by a foreign government and is employed in its service at a fixed freight but which remains under the control and management of the owner, who employs and pays the officers and crew, is not exempt from a suit in rem in a court of the United States for a maritime tort.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 69–85; Dec. Dig. ☞5].

4. CONSTITUTIONAL LAW ☞68(1)—JUDICIAL POWER—POLITICAL QUESTIONS.

A suggestion filed by the government of the United States in the District Court that a foreign steamship is requisitioned by and in the service of a foreign government, which does not contain a demand by the executive branch of the government that the ship should be released, does not constitute a decision by the executive department on a political question, and the District Court is entitled to go into evidence on the subject of the nature and terms of the requisition.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 125; Dec. Dig. ☞68(1).]

5. ADMIRALTY ☞5—DISCRETIONARY JURISDICTION—SUIT BETWEEN FOREIGN LITIGANTS.

That a vessel libeled for a tort committed on the high seas sails under a foreign flag, and that the libelant is a subject of another foreign nation, is not sufficient to require a court of admiralty of the United States to decline jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 69–85; Dec. Dig. ☞5.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

Suit in admiralty by Basil George Mangakas against the Italian steamship Attualita. Order made by the District Court releasing the steamship from custody on the ground that she had been requisitioned by the Italian government. Libelant appeals. Reversed.

On the 9th of September, 1916, in the court below, the appellant filed his libel in rem against the steamship Attualita. He sought to hold it liable for the damages. estimated at $800,000, occasioned by the alleged negligent sinking, on the 29th of July in the same year, by such vessel, of the Greek steamship Mina. The collision was said to have taken place in the Mediterranean Sea, some 50 miles east of Gibraltar. Under this libel the ship was arrested.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On the 20th of September the United States attorney for the Eastern district of Virginia, acting under the direction of the Attorney General of the United States, brought to the attention of the court "that the Attorney General of the United States has received from the Secretary of State of the United States a communication, dated September 15, 1916, to the effect that the Secretary of State has been advised by the Italian ambassador that the Italian steamship Attualita, which has been libeled and attached in this proceeding, was at the time of the said attachment and is now requisitioned by the Italian government, and was at the time of said attachment and is now in the service of the Italian government." The district attorney stated he was further directed to call the attention of the court in this connection to The Luigi (D. C.) 230 Fed. 493, and concluded by stating that "in bringing this matter to the attention of the court the United States does not intervene as an interested party, nor do I appear either for the United States or for the Italian government, but I present the suggestion as amicus curiæ, as a matter of comity between the United States government and the Italian government, for such consideration as the court may deem necessary and proper." Two days later the master of the steamship intervened for the interests of its owner, an Italian corporation, for the sole purpose of filing exceptions to jurisdiction and making claim for the vessel. He objected to the jurisdiction on the ground that the vessel was requisitioned by the Italian government for the purpose of transporting military supplies.

Evidence was taken in the court below. It showed, among other things, that the vessel had been requisitioned by the Italian government; that is to say, the Italian government had required the owners to navigate the ship to and from such ports, and to carry such cargo, as the government, during the period of the requisition, should direct. For the use of the ship the government paid its owners at certain fixed rates. The owners paid all the wages of the captain and crew and the other expenses of the ship, which was navigated by the captain and crew employed by the owners. Just before the arrest the vessel had come into the port of Norfolk in ballast, and was about to proceed to Baltimore to load, according to the directions of the Italian government, a cargo of grain and rails for Italy. The learned judge below reached the conclusion that the steamship, for reasons of comity, should be released, and so ordered. In such order it was declared that the court had not in any manner dealt with the merits of the case set forth in the libel, or with the question of jurisdiction as between the libelant and the respondent shipowner, or the master, who has claimed the ship, and that the release was ordered solely on the ground that at the time of the arrest the ship was under requisition by the government of the kingdom of Italy, and was without prejudice to the merits of the case. In order that the appellant might appeal, the operation of the order was suspended for 10 days.

John M. Woolsey, of New York City, Edward R. Baird, Jr., of Norfolk, Va., and J. Parker Kirlin, of New York City, for appellant.

Robert M. Hughes, of Norfolk, Va., for appellee.

Floyd Hughes, of Norfolk, Va., and Francis Rawle, of Philadelphia, Pa. (Hughes & Vandeventer, of Norfolk, Va., and Joseph W. Henderson, of Philadelphia, Pa., on the brief), for the Italian embassy and government, as amici curiæ.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

PER CURIAM. The appellee steamship makes five contentions:

[1] 1. The decree below is not final, and therefore not appealable. The libel in this case is in rem. The vessel by the decree below is released from arrest. This in effect terminates the proceeding as against her. Counsel upon both sides seem to be at one that, as a practical matter, if this decree remains unreversed, nothing else can be done in the court below which would be worth doing. The question whether a decree is final and appealable is not determined by the name which the court below gives it, but is to be decided by

the appellate court on consideration of the essence of what is done by the decree. Potter v. Beal et al., 50 Fed. 860, 2 C. C. A. 60.

[2] 2. The steamship says that the question involved is one of jurisdiction. The appeal should therefore have been taken to the Supreme Court. The objection which prevailed in the court below was not to the jurisdiction of the District Court of the United States as a federal court, but was an objection which went equally to the jurisdiction of any court, state or federal, and for that reason the appeal to this court was properly taken.

[3] 3. It is asserted that the steamship is immune to proceedings in any court. It is admitted that to give this immunity it will be necessary to take a step beyond that which has been taken in any decided case, although it is argued that the logic of some decisions heretofore made require that step. We are frankly reluctant to take it. There are many reasons which suggest the inexpediency and the impolicy of creating a class of vessels for which no one is in any way responsible. For actions of the public armed ships of a sovereign, and of those, whether armed or not, which are in the actual possession, custody, and control of the nation itself, and are operated by it, the nation would be morally responsible, although without her consent not answerable legally in her own or other courts. For the torts and contracts of an ordinary vessel, it and its owners are liable. But the ship in this case, and there are now apparently thousands like it, is operated by its owners, and for its actions no government is responsible, at law or in morals.

The persons in charge of the navigation of the ship remain the servants of the owners and are paid by them. The immunity granted to diplomatic representatives of a sovereignty, to its vessels of war, and under some circumstances to other property in its possession and control, can be safely accorded, because the limited numbers and the ordinarily responsible character of the diplomats or agents in charge of the property in question and the dignity and honor of the sovereignty in whose services they are, make abuse of such immunity rare. There will be no such guaranty for the conduct of the thousands of persons privately employed upon ships which at the time happen by contract or requisition to be under charter to sovereign governments.

[4] 4. The steamship says that in any event her right to immunity is a political question, which has been passed upon by the executive branch of the government. A comparison of the suggestion which was filed in The Exchange, 7 Cranch, 116, 3 L. Ed. 287, with that in this case, shows quite clearly that, while in The Exchange the executive demanded the ship's release, it has in this case carefully refrained from doing anything of the kind.

[5] 5. It is said that in the exercise of a sound discretion jurisdiction should be declined. The ship flies a foreign flag. The libelant is a subject of another foreign monarch. The tort complained of was committed upon the high seas. We think this contention foreclosed by what the Supreme Court said in The Belgenland, 114 U. S. 368, 5 Sup. Ct. 860, 29 L. Ed. 152.

For these reasons, the decree below, dismissing the vessel from arrest, must be reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.

NOTE.—The opinion of Waddill, District Judge, delivered in the court below, is as follows:

Gentlemen, we all appreciate the importance of this case, and I would like to have more time to consider it than I can have, if I dispose of it at this time. In that connection, however, I will say that it has been before me during the last two weeks several times, and has been argued on two occasions previous to this, and I think I can decide it now, which seems desirable, as anything that is to be done with respect to a war vessel, or a vessel used in connection with the war, is in its nature urgent.

The case is one, briefly, in which the libelant, as sole owner of the Greek steamship Mina. seeks to recover damages against the respondent ship, Attualita, for damages sustained in collision, on or about the 29th day of July, 1916, at approximately half past 2 o'clock in the morning, in the waters of the Mediterranean Sea, some 30 miles east of Gibraltar, during the existence of a thick fog. Libelant claims damages in the sum of $800,000, the ship and cargo having been wholly lost.

After the Attualita arrived in Hampton Roads, seizure was regularly had. Appearance was made by the Italian government, through the interposition of the Attorney General of the United States, as amicus curiæ, and also by counsel likewise appearing as amicus curiæ, and counsel also specially appearing for the owner of the Attualita.

I have examined carefully the cases submitted to me to-day. The Davis, 10 Wall. 15, 19 L. Ed. 875; The Fidelity, 16 Blatchf. 569; Fed. Cas. No. 4,758; Long v. The Tampico (D. C.) 16 Fed. 491; The Athanasios (D. C.) 228 Fed. 558; The Luigi (D. C.) 230 Fed. 493.

The Frankmere, an unreported decision of this court, is more like the present case than any other I have seen. There the government, however, did not appear, which distinguishes it materially from this case. If the Italian owner was here seeking the release of this ship, and his government did not interpose, I would not have the slightest doubt as to what should be done. The first three cases above cited, while very interesting, do not bear especially upon the question here. It will be found that they turn either upon the fact of the assertion of a claim for salvage, for saving the res involved, or that the government was not actually in possession of or had control of the property, or that the same was not devoted to public use in connection with the government's operations. In the last two cases, cited from 228 and 230 Fed., respectively, the facts of the requisitions are not fully shown, and the opinion in each case, as bearing on the questions under consideration here, apparently, is obiter dicta.

I apprehend the appearance of the Italian government, in the manner indicated, is sufficient; and the appearance of the owner is entered specially to raise the question of the jurisdiction of the court.

The first question is as to the effect of the appearance by the Italian government. Counsel insist that the appearance and claim, and assertion of sovereignty, is all that is necessary and required, and, when that is done, the court should take no further action—citing The Exchange, 7 Cranch, 116, 3 L. Ed. 287; The Parlement Belge, 4 Prob. Div. 129; Id., 5 Prob. Div. 197.

I have no doubt that, where a government owns the res, its appearance and claim is all that is necessary to end the proceeding, but that is not this case. The Italian government makes no claim of ownership to the ship, but merely that it is requisitioned for governmental purposes, entitling it to the possession thereof, thus necessarily bringing up the terms and conditions of the requisition. Hence the court should put the government to proof, to show its connection with the ship in such way as to establish its freedom from the seizure.

The effect of the requisition must be considered in the light of the use to be made of the ship. Undoubtedly, when this ship was attached, she was under the management of her owners, so far as manning and operating her were concerned. But she was at the same time under requisition by, and under the control and direction of, the Italian admiralty, taking orders therefrom, and at the time of the seizure was in this harbor under such orders, en route to Baltimore for cargo for that government.

Under these circumstances, can the libelant maintain the attachment, without depriving the Italian government of the possession and use of the ship, assuming the requisition to have been regularly made? I think that right has been established, and, that being so, this court should be very slow to interpose, especially at the instance of private litigants of another country (The Belgenland, 114 U. S. 355, 362, 5 Sup. Ct. 860, 29 L. Ed. 152), and seize the ship, and take it from the possession of the Italian government.

This is my view. It may be a great hardship on the libelants; but it is not for me to determine the course of the Italian government. It may have been necessary, in order to preserve its rights to the possession of the ship for governmental purposes, to intervene in these proceedings, and for the court of the United States to wrest the ship's possession from her would tend to disturb the international comity existing between the two nations, which are now friendly. Especially is this true when the Italian government is engaged in war.

The attachment, so far as the Italian government is concerned, will be abated, and the ship released.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes