## FULLMAN v. STEEL CITY ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit. September 30, 1924. Rehearing Denied December 1, 1924.)

No. 3096. '

**I. Master and servant ⪪⟶62—Equitable title to patent held to be in employer of inventor under contract.**

Under a contract between defendant corporation and complainant, then its general manager, the equitable title to a patent for an invention made by complainant while so employed, and developed and perfected in defendant's shop during working hours, but patented after the relation had ceased, *held* to be in defendant, subject to its payment of the expense incurred in securing the patent.

**2. Equity ⪪⟶66—Maxim, "he who seeks equity must do equity," applicable to defendant, asking affirmative relief.**

The maxim, "he who seeks equity must do equity," is as appropriate to the conduct of a defendant as to that of the complainant, and should be applied in every case where its application is necessary in order to do justice.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Suit by James M. G. Fullman against the Steel City Electric Company. Decree for defendant on counterclaim, and complainant appeals. Affirmed on condition.

Winter & Brown and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa. (Frederick W. Winter, George D. Wick, and Paul N. Critchlow, all of Pittsburgh, Pa., of counsel), for appellant.

Patterson, Crawford, Miller & Arensberg, of Pittsburgh, Pa. (Green & McCallister, of Pittsburgh, Pa., of counsel, and C. F. C. Arensberg and E. W. McCallister, both of Pittsburgh, Pa., on the brief), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

DAVIS, Circuit Judge. This suit was brought by James M. G. Fullman, plaintiff, charging that the defendant infringed letters patent No. 1,251,497, issued to him January 1, 1918, for the improvement in floor outlet boxes. The defendant admitted the manufacture, use, and sale of the boxes, but alleged that it owned the invention and the letters patent, and filed a counterclaim or cross-bill, wherein it prayed that the court decree that the invention and patent belonged to it, that it order the plaintiff to assign them to it, and dismiss the bill. The case was tried to the court, which entered a final decree in accordance with the prayer of the counterclaim. From this decree the plaintiff has appealed to this court.

The plaintiff prior to 1904 had been manufacturing adjustable outlet boxes, under his patent No. 899,381, applied for May 6, 1902, and issued April 11, 1904. In or about the year 1903, the plaintiff became involved in financial difficulties and sold his business to the defendant, which was incorporated at that time for the purpose of purchasing it. Fullman acquired about one-third of the stock of the new corporation, became its general manager, and conducted its business, from that time until March 15, 1913, under a license which he had granted to it under his first patent. About the year 1907 the need of a nonadjustable floor outlet box was recognized. This type of box was invented by the plaintiff, and was covered by the patent in suit, which was applied for November 17, 1908. The patent not being issued, the application was renewed June 13, 1916, and the patent was finally issued January 1, 1918. The nonadjustable box was put upon the market in

May, 1908. From that time until the plaintiff, as general manager, severed his connection with the defendant, it manufactured and sold, under his management, the nonadjustable boxes, and has continued to do so since he left.

As if to prevent such controversies as have resulted in this litigation, the parties hereto entered into an agreement on May 1, 1907, wherein it was provided that, if plaintiff should make, conceive, or develop any invention while thus employed by the defendant company, it should "be his sole and exclusive property." But the agreement further provided that:

"Nevertheless, should the said Fullman voluntarily invent and develop and perfect any invention during working hours, upon being requested by any officer or the board of directors of the said company to improve, develop, or perfect any current methods of manufacture, apparatus, device, or article then being used or manufactured, or for which arrangements have been made for the manufacture or use by the said company, expending the moneys and materials of said Steel City Electric Company in such development, improvement, or perfection, all such inventions and improvements so perfected and developed, and all letters patent that may be obtained therefor, shall be the property of the said Steel City Electric Company, its successors and assigns, and the said Fullman agrees to do every act and thing requisite to vest said patent or patents in said Steel City Electric Company, without any other or additional consideration to the said Fullman than herein expressed."

[1] The real question, therefore, is the ownership of the invention and letters patent. This must be determined from what was done under the agreement. The defendant contends that the nonadjustable boxes were voluntarily invented and developed during working hours, upon the request and at the expense of the defendant, and therefore the invention and letters patent belong to it. As evidence of this fact, it points out that, from the date of the invention until July, 1915, no demand whatever was made on defendant by plaintiff with regard to this invention, and the demand made then was that he be reimbursed for the expenses which he had theretofore incurred in prosecuting the application for the patent.

Until about the time this suit was begun, his attitude had always been that the invention belonged to the defendant. On December 1, 1908, he wrote, in the name of and for the defendant, to the Machen & Mayer Electrical Manufacturing Company, of Philadelphia, and to W. R. Ostrander & Co., of New York, notifying them that they were infringing defendant's invention, and said, "We send you this letter to advise you that we will protect our rights," and signed the letters, "Steel City Electric Company, J. M. C. Fullman, Manager." On April 25, 1913, about a month after leaving its employ, plaintiff wrote defendant, threatening to institute proceedings against it unless royalties were paid under his earlier patent, but did not say a word about royalties, fees, or expenses regarding the invention covered by the patent in suit.

The learned trial judge, who saw the witnesses and heard them testify, found the following facts:

"He made drawings at night for a nonadjustable box, and had the matter up with Mr. Patterson, president of the corporation, and the other directors of the company, explaining to them the description of the new construction. After some conference, they instructed the plaintiff, as manager, to make the box and sell it.

"The nonadjustable floor box here in issue was invented by the plaintiff, developed and perfected while the plaintiff was in the employ of the defendant company, and while he was, in fact, manager of that company. The work of development was not only carried forward in the shop of the defendant, but was also done during working hours at the expense of the defendant, while the plaintiff was manager and in full and complete charge of the business of the company. This work was also carried forward with the knowledge of the other officers of the defendant company, in the defendant's tool room, and was personally conducted by one of the company's employees, Harry A. Beltz, the shop foreman of the defendant company, under the direct supervision of the plaintiff."

If the evidence supports this finding, and we think it does, the invention and patent belong to the defendant, under the "nevertheless" provision in the agreement. The plaintiff agreed "to do every act and thing requisite to vest said patent or patents in said Steel City Electric Company, without any other or additional consideration to the said Fullman than herein expressed," and this agreement he must keep and perform.

The clear implication, however, if not ex-

press provision, is that the defendant would bear all expenses of developing and perfecting any invention Fullman might make. This includes the expenses incident to securing a patent for the invention. While the defendant has the right to have the court decree that title to the invention and letters patent is in it, and to require plaintiff to assign his right, title, and interest in and to the patent to it, yet, before it can demand that its rights be enforced, it must discharge its own obligations to the plaintiff, by paying the expenses incurred by him in securing the patent.

[2] Pervading the administration of equity in all its branches are certain broad principles, so generally accepted and of such fundamental character that they have become known as maxims. One of the oldest and most venerable of these is that "he who seeks equity must do equity." Hanson v. Neal, 215 Mo. 256, 273, 114 S. W. 1073, 1078. It applies to one who affirmatively seeks equitable relief (Columbus v. Mercantile Trust Co., 218 U. S. 645, 662, 31 S. Ct. 105, 54 L. Ed. 1193), but it is as appropriate to the conduct of the defendant as to that of the complainant (Brown, B. & Co. v. Lake Superior Iron Co., 134 U. S. 530, 535, 10 S. Ct. 604, 33 L. Ed. 1021), and it should be applied in every case where its application is necessary in order to do justice (Mutual Benefit Life Insurance Co. v. Brown, 30 N. J. Eq. 193, 199). Having jurisdiction of this case on appeal, it is our duty and in our power to require the payment of these expenses. Potter v. Beal, 50 F. 860, 864, 2 C. C. A. 60.

Therefore, upon their payment, with interest, the decree will be affirmed.