## THE KIA ORA.

### MERRITT & CHAPMAN DERRICK & WRECKING CO. v. READ.

(Circuit Court of Appeals, Fourth Circuit. July 15, 1918.)

#### No. 1595.

1. SALVAGE ☞26—AMOUNT—ELEMENTS IN ESTIMATE.
   The elements which enter into the estimate of salvage enumerated.

2. SALVAGE ☞51—APPEAL—REVIEW.
   While since Act March 3, 1891, as before Act Feb. 16, 1875 (Comp. St. 1916, §§ 1585, 1586), appellate jurisdiction in admiralty is not limited to matters of law, finding of fact as to allowance for salvage should not be disturbed for mere doubt, or inclination to differ, but only for clear and certain conviction.

3. SALVAGE ☞27—AMOUNT—COMPUTATION.
   The per cent. basis is no longer followed in determining allowance for salvage, and no formula meeting the justice of every case can be given.

4. SALVAGE ☞26—VALUE OF VESSEL.
   Relative to award of salvage for rescue of vessel, her real value is her value as reduced by the fact of her being under requisition of the British government.

5. SALVAGE ☞51—APPEAL—FREIGHT MONEY.
   There being nothing to show on appeal in a salvage case that the value of the cargo was estimated at point of shipment, and not at point of destination, there is no ground for adding freight money.

6. SALVAGE ☞30—FUTURE PERIL—ABSENCE OF OTHER AID.
   Future peril of complete loss from storms, frequent in the region, is to be considered in awarding salvage for rescue of vessel stranded on a coral reef near the Bahamas, especially, in view of no other aid being procurable, except from a distance.

7. SALVAGE ☞26—MAINTENANCE OF LOCAL SALVAGE PLANT.
   Vital importance of a local salvage plant and vessel to ships navigating those waters justifies encouragement of their maintenance by fairly liberal awards for salvage.

8. SALVAGE ☞30—STRANDING—AMOUNT OF AWARD.
   All things considered, held, an award of $100,000, for rescue by vessel of a local salvage plant of a ship, with cargo worth $3,900,000, from coral reef near the Bahamas, should be increased to $150,000.

9. INTEREST ☞39(2)—SALVAGE—DECREE—INCREASE ON APPEAL.
   Decree on appeal increasing allowance for salvage will draw interest from date of District Court decree.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty for salvage by the Merritt & Chapman Derrick &

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Wrecking Company against A. C. Read, master of the steamship Kia Ora and claimant and bailee thereof, and her cargo and freight money. From a decree for less than claimed (246 Fed. 143), libelant appeals. Modified.

H. H. Little and Leon T. Seawell, both of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

Floyd Hughes, of Norfolk, Va., and Chauncey I. Clark, of New York City (Burlingham, Veeder, Master & Fearery, of New York City, and Hughes & Vandeventer, of Norfolk, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. The District Court awarded $100,000 to Merritt & Chapman Derrick & Wrecking Company, on a claim of $600,-000 for salvage service to the British steamship Kia Ora. The libelant appealed alleging the award to be grossly inadequate. The Kia Ora on February 24, 1917, reached the Crooked Island Passage in the Bahama Islands on her way from Melbourne, Australia, to London, via the Panama Canal. In the evening of that day, the vessel struck a coral reef and grounded thereon from about amidships nearly to the bow. In response to her wireless call, the Wrecking Company, from its office at Kingston, directed its salvage ship, Relief, to go to the steamer's assistance. The Relief started at 5 p. m. on Saturday, February 26, and reached the Kia Ora 360 miles distant at 6 a. m. Tuesday, February 27. The master of the Relief, under agreement with the master of the Kia Ora, immediately took charge of the stranded vessel and began the work of rescue. Continuous and skillful work resulted in releasing the Kia Ora at 3:45 p. m. Saturday, March 3, in such condition that, although somewhat injured, she was able to proceed without assistance to Newport News.

[1] The elements which enter in the estimate of salvage are: (1) The value of the property in peril and the proportion of the value lost and saved; (2) the degree of peril from which lives and property are rescued; (3) the value of the property employed by the salvor, and the risk of life and property incurred; (4) the skill and dispatch shown in rendering the service together with the foresight and skill exercised in the preparation to render it; (5) the time consumed and the labor performed by the salvor. The Blackwall, 10 Wall. 1, 19 L. Ed. 870. The consideration of all these elements should result in an award which will express reasonable actual compensation for the labor, risk, and skill of the salvor and the use of his vessel and appliances, and an added amount based on the degree of peril of property and life and the value of the property saved and lost sufficient to promote the highest degree of readiness and efficiency for the relief of vessels in distress.

[2] Act Feb. 16, 1875, c. 77, 18 Stat. 315 (Comp. St. 1916, §§ 1585, 1586), gave to the Supreme Court appellate jurisdiction in admiralty only as to matters of law. That limitation was not incorporated in the Judiciary Act of 1891 (Act March 3, 1891, c. 517, 26 Stat. 826),

and the Circuit Court of Appeals now has the same appellate jurisdiction in admiralty, both as to matters of law and fact, that the Supreme Court had before the act of 1875. In the Connemara, 108 U. S. 352, 2 Sup. Ct. 754, 27 L. Ed. 751, the court says:

"Before the act of 1875, this court, upon an appeal in a case of salvage, gave the same weight, and no more, to the decree of the court below, that a court of common law would allow to the verdict of a jury, and might revise that decree for manifest error in matter of fact, even if no violation of the just principles which should govern the subject was shown. Post v. Jones, 19 How. 150, 160 [15 L. Ed. 618]. Since the act of 1875, in cases of salvage, as in other admiralty cases, this court may revise the decree appealed from for matter of law, but for matter of law only, and should not alter the decree for the reason that the amount awarded appears to be too large, unless the excess is so great that, upon any reasonable view of the facts found, the award cannot be justified by the rules of law applicable to the case."

This language, together with the following statement in The Ariadne, 13 Wall. 475–479 (20 L. Ed. 542), expresses as accurately as the nature of the subject will admit the limits to be observed by appellate courts in reviewing findings of fact of trial courts:

"We are not unmindful that both the Circuit and District Court came to a conclusion different from ours as to the alleged fault of the steamer. Their judgments are entitled to, and have received, our most respectful consideration. Their concurrence raises a presumption, prima facie, that they are correct. Mere doubts should not be permitted to disturb them. But the presumption referred to may be rebutted. The right of appeal to this court is a substantial right, and not a shadow. It involves examination, thought, and judgment. Where our convictions are clear, and differ from those of the learned judges below, we may not abdicate the performance of the duty which the law imposes upon us by declining to give our own judicial effect."

A doubt, or even a decided inclination to differ, does not warrant interference with the finding of fact of the trial court, and this is especially true as to the amount to be allowed in salvage cases; but when a careful examination of the evidence in all of its bearings results in a clear and certain conviction of the appellate court, differing from the finding of the trial court, it is the duty of the appellate court to follow that conviction.

[3] Examination of the many cases with their varying facts gives a general sense of the proportion which the award ought to bear to the risk and expense incurred, the skill employed, the value of the property saved and the property lost, the peril of the vessel and cargo, the investment and enterprise of the salvor, the liberality of the allowance for profit in order to encourage enterprise in assisting and saving vessels in peril. But no formula can be derived which will meet the justice of every case. The per cent. basis is no longer followed, because its application to the large values of modern times would lead to obvious injustice. Post v. Jones, 19 How. 150, 15 L. Ed. 618. In view of these rules, we consider the strong and perspicuous opinion of the District Judge.

[4, 5] There was no error in the District Court's estimate of the value of the property in peril and the proportion of it saved and lost. The Kia Ora was built in 1907, and classed "A1" at Lloyd's. She was 448 feet long, 57 feet beam, 35 feet deep, 6,557 tons gross, 4,168

tons net, with a cargo capacity of 11,800 tons. Her cost was $700,000. Free on the market at the time she was stranded, her market value would have been $3,000,000; but the fact that she was under requisition of the British government reduced this market value to $1,772,-600. It seems clear that her real value, as properly found by the District Court, was her value under the actual condition of requisition, not what would have been her value with that condition removed. The value of her cargo of wool, fresh meat, and cheese was admitted to be $2,565,863. But to accomplish the salvage it was necessary to jettison meat and cheese of the value of $428,310, leaving the net value of the cargo, $2,128,533. This, with the value of the ship made the total value of the property saved $3,901,173. As there is nothing to show that the value of the cargo was estimated at point of shipment and not at point of destination there is no ground to add freight money to the value of the cargo as fixed by the District Court.

[6] This great property was in danger of total loss. It is true that the master of the Kia Ora and the master of the Relief disagree on this point, but the finding of fact of the District Court that a large ship stranded on a coral reef near the Bahama Islands was in great danger of being broken up by the frequent storms of that region is within common knowledge, and is well supported by the testimony. Such future peril is to be considered in awarding salvage. Anderson v. The Edem (D. C.) 13 Fed. 135; The St. Paul (D. C.) 82 Fed. 104; Id., 86 Fed. 340, 30 C. C. A. 70. The importance of this element of danger of complete loss of the vessel and cargo, in the estimation of the value of the service rendered, is magnified by the fact that no other assistance was at hand, or could have been procured short of Norfolk or New York, and by the evidence of the master of the Relief that he knew of no other wrecking concern that could have released the Kia Ora. The Boyne (D. C.) 98 Fed. 444.

[7] The value of the salvor's ship was $450,000. It was built especially for wrecking purposes at a cost of $175,000, and carried a crew of 70 men. The value of the plant at Kingston does not appear, but it was maintained at an annual expense of $36,000. The vital importance of this plant and the salvage vessel to all ships navigating those waters, especially to large vessels like the Kia Ora, obviously justifies the encouragement of their maintenance by fairly liberal awards for salvage. There was some, but no great, peril incurred by the Relief and her crew. Taking no account of the time spent in getting the Relief ready, and in reloading a part of the cargo landed from the Kia Ora, the time actually taken by the Relief and her crew from the start of the Relief from her port until the Kia Ora was floated was 6 days.

[8] If only ordinary skill, preparation, and dispatch had been added to the elements mentioned as entering into the award made by the District Court, we should have been content with it. But we are constrained to think that the special and complete preparation for the work in vessel and appliances, officers, and men, and the dispatch, care, and ability with which the work was done, the award should have been somewhat greater, in order not only to encourage the main-

tenance, but the improvement, of such standards of preparation, skill, and dispatch. It cannot be doubted that this preparation, skill, and dispatch resulted in getting the Kia Ora afloat, not only in better condition, but in a much shorter time than the result could have been otherwise achieved, if, indeed, it could have been achieved at all by other available means. The saving of the vessel and cargo was the primary consideration; but, in this time of scarcity of ships, every day of service saved to the vessel was a great gain. It is to be considered also that the award of $100,000 was of hardly more value or greater encouragement for such service than an award of $50,000 would have been 10 years ago. A review of the cases would be of little value, since they are collated in text-books and in annotated cases; each of them depending on its own peculiar facts and in a degree on the mental attitude of the judge who decided it.

The well-considered case of The St. Paul (D. C.) 82 Fed. 104, and 86 Fed. 340, 30 C. C. A. 70, is most nearly analogous. The St. Paul, a ship worth $2,000,000, with a cargo of equal value, was stranded on the Jersey coast, and was rescued by wrecking vessels of the value of $400,000. The award was $131,000 for the vessel and $29,-000 for the cargo. It is true that several tugs and 207 men were occupied 11 days, while here one vessel and 70 men were engaged 6 days. It is also true that the vessel and all the cargo were saved, while goods in the Kia Ora of the value of $428,310 were lost. But over against this is to be set the fact that more than one-half of the value of the cargo of the St. Paul was gold, and that this, and it seems all the cargo, could have been taken off, even if the vessel had been lost, while the larger part of the cargo of the Kia Ora necessarily would have been lost with the vessel. In this view, we reach the conclusion that the benefit of the services to the Kia Ora was therefore at least equal to that rendered the St. Paul. Looking at the case in the light of the award in the case of the St. Paul, comparing the awards made in various other cases, American and British, and considering the great value and the great peril of the ship and cargo, the preparation for the work, the skill and dispatch of the service, the importance of time to the Kia Ora, the perishable nature of a large part of her cargo, and the decreased value of money, and giving due weight to the strong opinion of the learned and experienced District Judge, the majority of this court cannot escape the clear and strong conviction that the award should be increased to $150,000.

[9] As the decree of the District Court would bear interest from its date, the decree, as modified, will bear interest as if the increased award had been allowed by the District Court. The decree of the District Court is modified accordingly.

Modified.