SOCIETA COMMERCIALE ITALIANA DI NAVIGAZIONE v. MARU NAV. CO.

THE ST. CHARLES.

(Circuit Court of Appeals, Fourth Circuit. February 23, 1922.)

No. 1904.

1. International law ⊚⟶10—Suggestion attached vessel is immune, as in service of foreign government, must come through State Department.

Suggestions that a vessel attached was immune from seizure, because at the time it was under requisition to and in possession of a foreign government, do not defeat the jurisdiction of the admiralty court, where they did not come through our own Department of State, but came from the consul and ambassador of the foreign government.

2. Salvage ⊚⟶23—Owner of vessel aided is liable in personam.

Libel in personam to recover salvage may be maintained against the owner of a vessel to which the services are rendered.

3. Salvage ⊚⟶18—Vessel not required to assist another under whose convoy she was required to travel.

Where an unarmed vessel was required by naval authorities to travel under the convoy of an armed vessel, she was under no legal obligation to render aid to the convoying vessel when the latter stranded, so that such services as she did render were voluntary, entitling her to salvage.

4. Salvage ⊚⟶36—Salvaging vessel is not bound by settlement of master for past services.

The owner of the vessel which rendered salvage services is not bound by a settlement made by the master after the services were rendered, though the owner will ordinarily be bound by an agreement made in good faith by the master for future services of salvage character.

5. Salvage ⊚⟶30—$34,000 for assisting stranded vessel by her convoy reduced to $20,000.

Where a vessel was required by naval authorities to travel under convoy of an armed vessel, and, while so traveling, assisted her convoy, which had become stranded, but the services involved no particular danger or difficulty, and were rendered only during the daytime, an award of $34,000 for salvage, with interest, will be reduced to $20,000, without interest, against which award will be credited a payment made to the master of the vessel rendering the assistance, to be distributed among his crew.

6. Salvage ⊚⟶30—Vessel under convoy owes moral duty to assist convoying vessel.

A vessel which was required by the naval authorities to travel under convoy of another owed a moral duty to assist to float the other after she stranded, though not a legal duty, and the existence of the moral obligation and the fact that the services resulted in the benefit to the salvaging vessel, as well as the other, will be considered in determining the amount of the salvage.

7. Salvage ⊚⟶26—Attempted settlement with master of salvaged vessel does not affect amount of award.

The amount allowed as salvage is not affected one way or the other by payments to the master of the assisting vessel, even if the owner of the assisted vessel attempted by a collusive settlement with that master to evade liability for a larger sum.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Libel in admiralty in personam by the Maru Navigation Company, as owner of the steamship St. Charles, and by the master, officers, and

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

crew of the steamship, against the Societa Commerciale Italiana Di Navigazione, to recover salvage. From a decree awarding to libelant $34,000, with interest.(271 Fed. 97), respondent appeals. Decree modified, to allow $20,000, without interest.

John C. Prizer, of New York City (Barry, Wainwright, Thacher & Symmers, of New York City, and Keech, Deming, Kemp & Carman, of Baltimore, Md., on the brief), for appellant.

Homer L. Loomis, of Baltimore, Md. (Loomis, Barrett & Jones, John Henry Skeen, and Bartlett, Poe & Claggett, all of Baltimore, Md., Isidore Rabinow, of New York City, and J. Kemp Bartlett, Jr., of Baltimore, Md., on the brief), for appellees.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

KNAPP, Circuit Judge. The case in outline is this: On June 8, 1917, the American steamship St. Charles and the Italian steamship Tea were at Gibraltar, both bound for Genoa. The St. Charles was much the smaller and unarmed; the Tea carried a gun. At that time the naval authorities would not permit an unarmed vessel to traverse the Mediterranean without an armed convoy, and accordingly the two vessels were directed to proceed in company. The Tea took the lead, following the windings of the Spanish coast; the St. Charles half a mile or so behind. Early in the morning of June 10th the Tea ran aground, about a mile off shore, and the St. Charles went to her assistance. By their united efforts the Tea was floated the next evening, some 39 hours after the accident happened, and the voyage thereupon continued. On the 16th Genoa was safely reached.

Some two days after arrival at that port the agents of the Tea gave the master of the St. Charles the sum of $5,000 for distribution among his officers and crew, for their services in aiding the former vessel, and also, besides a gold watch, the further sum of $8,000, which he retained, giving $1,000 of it to the master of the Tea and sending the balance home to his wife. In addition to these gifts, the agents of the Tea paid the cost of repairing the minor damages sustained by the St. Charles in assisting the stranded steamship. All this was unknown to the owners of the St. Charles until her return to New York, when certain members of the crew complained because they had received no part of the $5,000. Investigation followed, but it was several months before the facts were ascertained. In the meantime the Tea, after a couple of trips to the United States, had been sunk by a submarine.

[1] These proceedings were instituted in August, 1918, by libel against respondent, in personam, with a clause of foreign attachment, under which the steamship Armando was arrested. Suggestions were made by the Italian consul and by the ambassador of Italy that the Armando was immune from seizure because at the time under requisition to and in possession of the Italian government; but, as neither of these suggestions came from or through our own Department of State, the learned trial judge "declined to consider them as evidence upon the question of fact involved," and proceeded to hear the case on the merits. That this ruling was correct is not open to doubt under the decision of the Supreme Court in Ex parte Muir, 254 U. S. 522, 531, 532, 41 Sup.

Ct. 185, 65 L. Ed. 383. See also The Pesaro, 255 U. S. 216, 41 Sup. Ct. 308, 65 L. Ed. 592, and The Attualita (decided by this court) 238 Fed. 909, 152 C. C. A. 43. It is enough to say without discussion that the court below had full jurisdiction.

The trial resulted in a decree in favor of libelant for $34,000, with interest from November 1, 1917, less certain deductions on account of the $5,000 paid as above mentioned, and respondent appeals.

[2] It was apparently contended at the trial, though not urged here, that the owner of the Tea was not liable in personam, but the contention is without merit. United States v. Cornell Steamboat Co., 202 U. S. 184, 26 Sup. Ct. 648, 50 L. Ed. 987.

[3] It is argued with some insistence that the relations between the two vessels put upon the St. Charles the duty of assisting the Tea if occasion required, and therefore the former is not entitled to compensation. But those relations were not entered into by mutual consent; they were forced on the St. Charles; there was no agreement, express or implied, that she would aid the Tea in case of need; and no proof of any intent on her part to assume such an obligation. This being so, the service rendered by the St. Charles must be deemed a voluntary service—that is to say, a salvage service, as that term is commonly understood—for which she was entitled to be properly rewarded.

[4] It is further argued that the owner of the St. Charles is bound by the settlement alleged to have been made with her master when the $13,000 was paid him as above mentioned; but the argument must be rejected. For future services of a salvage character the owner will ordinarily be bound by an agreement of the master made in good faith, because of the necessities of the case; but for past services the settled rule is otherwise. The Inchmaree, [1899] L. R. Probate, 111; Bergher v. General Petroleum Co. (D. C.) 242 Fed. 967. How much the payment in this instance should now be taken into account is another question.

[5] In short, we agree with the conclusions of the trial court, except as to the compensation awarded the St. Charles, which seems to us excessive. The reasons for this view will be briefly indicated. It is to be noted in the first place that witnesses from the Tea were not available to respondent, certainly were not produced, because that vessel had been destroyed, and its officers and crew scattered, some time before the trial. The case, therefore, rests on the interested testimony of those on board the St. Charles. Without going into details, it is enough to say that the salvage services in dispute were not of exceptional merit. The Tea was aground for only a portion of her length and wholly uninjured. It was the pleasantest season of the year, the weather clear, and the sea calm. The assistance rendered by the St. Charles involved little, if any, risk to that ship, and no great exertion on the part of her crew. As one witness says, it was "no more dangerous than any other ordinary ship work." In fact, most of the crew had practically nothing to do. The St. Charles, it is true, went aground at the stern soon after starting to assist the Tea, but got herself off in a short time without damage. The efforts put forth the first day were suspended at

nightfall, and not resumed until the next morning. The total detention was less than 40 hours.

Moreover, it can hardly be said that the St. Charles was the only source of relief, since other vessels were passing at no great distance, from one or more of which the needful aid might have been procured. Nor does it seem to us that the danger of submarine attack was sufficient to be taken into serious account in estimating the value of the salvage services. The requirement to go under convoy did not of itself imply the presence of known and actual danger, but was rather a precaution against its possible existence. In the meager and indefinite testimony on this point, little support is found for belief that ships in the territorial waters of Spain were at that time in any real fear of molestation by German submarines; and apparently those in charge of the St. Charles had no apprehension on this score, as the only lookout kept was a man on the bridge.

[6] Whilst we hold, as above stated, that the relations between the two vessels were not such as to deprive the St. Charles of the right to compensation, we are nevertheless of opinion that those relations imposed upon each of them a degree of moral obligation to assist the other in case of need. Besides, it was to the obvious advantage of the St. Charles to render prompt aid when the accident happened. It was against orders for her to proceed without an armed convoy, and her officers were unfamiliar with the coast along which lay her course. This, then, is not the case of assistance which is at once voluntary and against self-interest, but distinctly the case of assistance which, although voluntary in a legal sense, is at the same time of direct and important benefit to the one by whom it is rendered. And this essential difference should be reflected in a materially less award than otherwise would be allowable.

[7] We are unable to see that the value of the services in controversy was affected one way or the other by the payments to the master of the St. Charles, even if it be true that by a collusive settlement with him the owner of the Tea attempted to evade liability for a much larger sum. The compensation which the St. Charles should receive is to be measured by what was done on the Spanish coast, and not by what afterwards took place in the harbor of Genoa.

Each case must, of course, be judged by its own facts, and comparisons are not controlling. But the conclusion reached by us, as to the proper award to the St. Charles, appears to be supported by the awards made in a number of recent cases of a more or less similarity. The St. Charles (D. C.) 254 Fed. 509; The Teresa Accama (D. C.) 254 Fed. 637; The Tordenskjold, 255 Fed. 672, 167 C. C. A. 48; The Jason (D. C.) 257 Fed. 438; The Professor Koch (D. C.) 260 Fed. 969; The Bretanier (C. C. A.) 267 Fed. 178.

Taking all the circumstances into account, we are of opinion that $20,000 would be adequate compensation to the St. Charles, and the decree below will be modified accordingly. We decline to allow interest on the amount awarded. The $5,000 paid to the master and distributed among the officers and crew will be deducted, and the remain-

ing $15,000 paid to libelant. But from this sum libelant shall pay to each member of the crew who got no part of the $5,000 the same amount as was paid therefrom to others receiving the same wages. Costs in this court to be equally divided between the parties.

Modified.