## In re 450 TONS OF BITUMINOUS COAL.

## NEW ENGLAND COAL & COKE CO. v. HUDSON et al.

(Circuit Court of Appeals, First Circuit. September 12, 1923.)

### No. 1597.

Salvage ⊜⟲22, 41—Rights under contract or to lien held not lost by use, without fraudulent purpose, of a small part of property transported or salvaged.

The use by libelants, who had contracted to remove a cargo of coal from a stranded vessel, of a small quantity of the coal, not exceeding a ton, for trial, with a view to purchasing the cargo, if satisfactory, *held* not to constitute embezzlement or fraudulent conduct, which deprived them of their right to recover on the contract, or to a lien under the rule in salvage cases.

Appeal from the District Court of the United States for the District of Maine; Clarence Hale, Judge.

Suit in admiralty by Alfred H. Hudson and others against a cargo of 450 tons of bituminous coal; the New England Coal & Coke Company, claimant. Decree for libelants, and claimant appeals. Affirmed.

For opinion below, see Hudson v. 450 Tons of Bituminous Coal, 283 Fed. 678.

Gerry L. Brooks, of Portland, Me., for appellant.

Nathan W. Thompson, of Portland, Me., for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from a decree in admiralty of the District Court of Maine on a libel in which the libelants claimed a lien on 450 tons of bituminous coal transported by them from the steamer Middlesex, which was stranded on Trundy's reef, outside of Portland Harbor, to Holyoke Wharf, in that harbor.

The steamer went ashore in May, 1922, and a contract was made with the firm of Howard & Horn to salvage her cargo of coal. Howard & Horn made a contract in writing with Baker & Hudson, the libelants, stevedores and owners of lighters, to remove coal from the steamer and land it upon Holyoke Wharf for the consideration of $2.25 per gross ton. It is agreed that the libelants removed from the steamer to the wharf 450 tons of coal under this agreement.

The claimant, by its answer, admits the agreement made with Howard & Horn and the removal of the coal, but alleges that the libelants wrongfully and without leave or permission from the claimant, its agent, or any other person authorized to give such permission, appropriated to their own use large quantities of such coal, without accounting for the same or making any offer of restitution; that the contract was a salvage contract, and that because of their tortious conduct the libelants had forfeited all right to any compensation.

The case was sent to a master in admiralty, who, after a hearing, reported that the libelants were entitled to recover the sum of $1,012.50, freight on 450 tons of coal at $2.25 per ton, less the value of one ton of coal, $8.50, leaving a balance of $1,004, with interest

⊜⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

from August 1, 1922. He also found that the small quantity of coal used by the libelants, not exceeding one ton, was used for the purpose of testing it, with a view of purchasing the cargo, or part of the same, for their uses, if·it proved satisfactory.

In addition to its own lighter, the libelants chartered the lighter Atlas from one Doyen. With his report the master filed the evidence taken before him. His report was affirmed by the District Court, and the claimant has taken an appeal. The evidence fully sustains the finding of the master that the small amount of coal used by the lighter of the libelants did not exceed one ton, and that it was used solely for the purpose of trying the coal, with the idea of purchasing the same, and without any fraudulent purpose. He also reported that the libelants were willing to be charged for the same, and that the value of the coal used by them did not exceed $8.50, which should be deducted from the amount due the libelants.

Upon the Atlas, when chartered by the libelants, there were 4 or 5 tons of coal in her bunkers, and under the terms by which she was hired the libelants were to pay $50 per day and furnish coal and water. The Atlas was taken to the Middlesex, and after a small amount of coal, found by the master not to exceed 3 or 4 tons, was placed upon her deck, she was unable, because of the roughness of the sea, to obtain more at the place assigned her to load, which was upon the windward side of the vessel. There was no opportunity to get at the hatches of the Middlesex upon her leeward side, because other lighters were being loaded there, and the Atlas, after waiting about the Middlesex for some time, came into the harbor with this small amount of coal upon her deck, which was not discharged at Holyoke Wharf. The Atlas was then chartered by Howard & Horn, with this coal aboard of her, and was loaded with coal from the Middlesex, which was sold to the owner of the Atlas, who testified that, when he bought the coal upon her deck, it was understood with Howard & Horn that he did not buy the 4 or 5 tons which were left upon her deck by Hudson & Baker, and which he said belonged to the lighter.

The master, in his report, finds that there were 3 or 4 tons of coal put on the Atlas, which were not discharged upon Holyoke Wharf, and that this was on board the Atlas when she was chartered and taken over by Howard & Horn.

The District Court has found "that the proofs utterly failed to show any such misconduct of libelants as to prevent them from recovery"; that the small amount of coal used by the libelants—"was used with entire good faith, and with no intent to fraudulently deprive the claimant of its property."

We think these findings are supported by the evidence, which discloses that the small amount of coal which was placed upon the Atlas was there when Howard & Horn chartered the lighter, and that other coal from the Middlesex was loaded by them upon top of this.

We see no reason why they should not have claimed the whole amount of coal on the deck of the Atlas, or why they should have allowed any deduction to be made by Doyen of this amount, when the latter purchased the coal upon the Atlas, as they must have known

'that all the coal upon her deck when they chartered her came from the Middlesex. There was no evidence that the libelants had ever agreed that Doyen, the owner of the Atlas, should have this coal to replace the coal which was in the bunkers of the Atlas when they chartered her, and some of which they had used, or, if Doyen so claimed, that his claim was ever made known to them, or agreed to by them.

We think the finding of the District Court was right, and that it was immaterial whether the contract was one of salvage or one for carriage; that there was no such fraud or tortious conduct on the part of the libelants as to cause them to forfeit their claim for the carriage of the coal which they did deposit upon Holyoke Wharf in accordance with the agreement.

The decree of the District Court is affirmed, with costs to the appellees.