## THE NAIWA.

## MERRITT & CHAPMAN DERRICK & WRECKING CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1924.)

No. 2229.

1. Salvage ⬡30—Award for salvage service approved.

Libelant, with a wrecking steamer and large crew, successfully salvaged a steamship which had been stranded in the Bahamas for 20 days and a part of her cargo jettisoned. She was worth before stranding, with cargo, $2,075,000, and there was a loss on vessel and cargo, because of the stranding, of $870,000. The work was efficiently done, but involved no special element of danger. *Held*, that an award, which included payment for the time of vessel and crew from the time of leaving to their return to port, and a bonus of $40,000, was fair and reasonable.

2. Admiralty ⬡118—Appellate court may increase or decrease award of trial court.

While the appellate court has power to increase or decrease a salvage award, it will not do so unless convinced that the trial court was so far in error as to have violated some principle of law, or plainly erred in the exercise of its discretion.

3. Salvage ⬡25 — Allowance of interest on award held within court's discretion.

Allowance of interest on that part of a salvage award which covered the outlay of the salvor from the time of the service, and on the award for salvage proper from date of the decree, *held* within the discretion of the court.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Suit in admiralty for salvage by the Merritt and Chapman Derrick and Wrecking Company against the United States, owner of the steamship Naiwa. From the decree, libelant appeals. Affirmed.

Charles S. Haight, of New York City (Haight, Smith, Griffin & Deming, of New

York City, and Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

H. H. Rumble, Sp. Asst. U. S. Atty. in Admiralty, of Norfolk, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va., J. Frank Staley, Sp. Asst. Atty. Gen. in Admiralty, G. R. Snider, Admiralty Counsel U. S. Shipping Board, of New York City, and H. T. Atkins, Sp. Asst. Atty. Gen., on the brief), for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. The libel in this case was filed by the appellant herein under the Suits in Admiralty Act of March 9, 1920, to recover for services performed by it in salving the steamship Naiwa in September, 1920.

[1] On the 15th day of August, 1920, the Naiwa, a steamship of 6,240 tons gross, belonging to the United States Shipping Board, while en route from Jacksonville, Fla., for Yokohama and other ports in the Far East by way of the Panama Canal, with a cargo consisting of steel plates, wire, tobacco, cotton, manufactured goods, and other merchandise, when about 275 miles out from Jacksonville, stranded near Stranger Cay, in the Bahama Islands. The ship's master immediately communicated with the Shipping Board at Washington and Jacksonville, and asked for assistance, which was promptly furnished by sending out to their aid two large ocean-going tugs, the Barstow and the Bathalum, two revenue cutters, two Coast Guard steamers, the steamship Balsam, and for a part of the time a torpedo destroyer, together with men and wrecking material, pumps, anchors, and cable, and also employed a large number of native Bahamans to assist in the undertaking. Every effort was made, with the assistance thus rendered, to extricate the ship from its imperiled position, jettisoning considerable of her cargo, which, however, proved unsuccessful.

On the 30th of August, 1920, the libelant corporation, expert wreckers, undertook the operation of salving the ship on the basis of "No cure no pay." In pursuance of this arrangement, libelant's wrecking steamer, the I. J. Merritt, with a full wrecking outfit and complement of men, left the port of New York on the 1st day of September, 1920, for the stranded vessel, and reached her at 8:40 a. m. on the 5th of September.

The wrecking master immediately took charge of the expedition, and of the work incident to the service in hand, and on the 9th of September succeeded in floating the vessel, and after performing necessary work, patching her bottom, etc., she was towed by the Merritt, with the aid of two government tugs, to Jacksonville, where she arrived on the 12th of September, and was turned over to the Shipping Board officials. Certain pumps belonging to the salvor were left on board the Naiwa, and the Merritt proceeded back to New York, where she arrived and completed the removal of her equipment on the 20th of September, 1924. The crew of the Merritt consisted of 29 men, and a special salvage crew of 24 men, consisting of expert divers, pumping engineers, and wreckers, who worked overtime 1,173 hours; 21 days in all were consumed in the undertaking, though only 4½ days were actually employed in floating the vessel.

The claim asserted is undoubtedly for a salvage service, but whether the same may be considered of a high order of merit, as that term is generally understood, is questionable. So far as promptness in the discharge of the undertaking and intelligent execution thereof is concerned, no improvement could doubtless well have been made, since the libelant is an expert in its business, and of large and varied experience; but otherwise what was done did not embrace elements which enter particularly into the increase of the merit of the service—that is to say, neither existing weather, sea, nor other conditions prevailed that so frequently make an undertaking of this sort hazardous in the extreme. While the usual apprehensions of danger arising from storms likely to occur existed, as a matter of fact there was no materialization along that line. The stranded vessel on the 9th of September, the day it was released from its position on the reef, was lying substantially in the same position that it had been in since the 15th of August, the day of the stranding, and during the entire period the most favorable weather conditions prevailed, so much so that a ship sent out to the rescue of the Naiwa by the government was able to remain alongside until she was floated, and the iron plate portion of the cargo jettisoned remained piled up where it had been thrown into the sea, and showing above the surface of the water, until it was afterwards replaced on board one of the vessels. No special risk of any kind existed, nor did

the undertaking involve great peril, or serious loss or damage to the salvor's property, nor great or unusual danger to its employés, nor call for heroic effort or extra hardship, either to them or the officers and crews of the salving vessel, and it does not appear that any accident of an unusual character in connection with the same occurred.

The value of the property salved, as well as that of the salvor employed in the venture, and the success attained by the salvor, as well as the losses sustained by the owners of the property salved, should, of course, be given consideration. The values were considerable, and the losses to the property salved serious. The Naiwa before the stranding was approximately worth $1,300,-000, and her cargo approximately $775,000. The salved value of the Naiwa at Jacksonville was stipulated to be $875,000, and the salved value of the cargo $325,000, making a total of $1,200,000, which shows that the damage to the ship by stranding was $425,-000 and of the cargo $445,000, in all a total loss sustained by the owner of the vessel and cargo of $870,000.

In argument, a salvage award of $120,-000 was asked, though at an earlier stage of the case it appears that this claim had been placed at $95,000, as reasonable compensation for the service. Libelant insisted that it had incurred expenses amounting to $31,793.41. This item included $1,000 a day for 21 days for the time the Merritt was absent from New York. The District Court, upon full consideration of all the testimony, having heard and seen the witnesses, made an award to the libelant of $67,500; that is, it reduced the claim of $31,793.41 for alleged expenses to $27,500, and by way of bonus allowed the sum of $40,000. It is as to the correctness of this decision, and the sufficiency of the allowance made that we are called upon to pass. Libelant insists that the amount be increased, and that the award made by the court is unreasonably low, and not sufficient to enable it to maintain its wrecking business. We have therefore to determine whether this court should exercise its discretion to increase what the lower court has ascertained to be fair and just compensation, and in that connection we must not lose sight of the rules properly governing us in the review of the decision of the trial court in such circumstances.

[2] This court undoubtedly has the right in an admiralty case to increase or decrease the amount of a salvage award made by the trial court, but the principles upon which

this should be done are well and definitely settled, viz. that because we think that perhaps as trial judges we would have reached a different conclusion from the one arrived at, still that should form no basis for our disturbing the finding, unless under all the circumstances we are convinced that the court whose judgment is under review was so far in error as to have violated some principle of law or had plainly erred in exercising its discretion in fixing the amount of the allowance. This is the correct rule by which we should be guided, and authorities to support the same are readily at hand; indeed, the question is fully covered by recent and previous decisions of this court. The Sybil, 4 Wheat. 98, 4 L. Ed. 522; Hobart v. Drogan, 10 Pet. 119, 9 L. Ed. 363; The Camanche, 8 Wall. 448, 19 L. Ed. 397; The Ariadne, 13 Wall. 475, 20 L. Ed. 542; Oelwerke Teutonia v. Erlanger, 248 U. S. 521, 39 S. Ct. 180, 63 L. Ed. 399; R. R. Rhodes, 82 F. 751; The Kia Ora, 252 F. 507, 164 C. C. A. 423; The Kanawha, 254 F. 762, 166 C. C. A. 208; United States v. Nelson et al. (C. C. A.) 276 F. 706; The Santa Barbara (C. C. A.) 299 F. 152.

In The Kia Ora, 252 F. 507, 164 C. C. A. 423, supra, a decision of this court in a most important case, and relied upon by both sides, Judge Woods, increasing a salvage award, speaking for the court, properly stated the doctrine by which we are controlled, as follows: "Doubt, or even a decided inclination to differ, does not warrant interference with the finding of fact of the trial court; and this is especially true as to the amount to be allowed in salvage cases." A full consideration of this case, in the light of all the circumstances, convinces us that no rule of law was violated by the trial court, and that, so far from it being one in which we would be warranted in increasing the amount allowed, the award as made was liberal in behalf of the salvor for the service rendered.

[3] Appellant assigns as error the allowance of interest made by the District Court, and insists that the same should have run upon the whole award from the time of the completion of the salvage service. The allowance of interest, like that of the amount of salvage, is subject to the review of this court, and the same may be given or withheld in its discretion. The St. Charles, 280 F. 334, 337, a decision of this court. Here the District Court allowed interest on $27,500, the amount of the so-called out of pocket costs incident to the

service from the 9th of September, 1921, and decreed interest on $40,000 allowed as bounty, from the 7th of June, 1923, the date of the final decree being November 10, 1923. We are not inclined to disturb the finding of the lower court in the matter of the allowance of interest.

The libelant also assigns as error the action of the District Court in refusing to allow its counsel to further cross-examine the master of the salved ship. We are convinced, from a careful perusal of the record, that the trial judge only exercised his reasonable discretion in what he did, and that the exceptant's case was not prejudicially affected thereby.

The decree of the lower court will be affirmed, with costs.

Affirmed.