## ATLANTIC TOWING CO. et al. v. THE EGBERT H et al.

### No. 476.

District Court, S. D. Georgia, Savannah Division.

March 16, 1942.

T. M. Cunningham, of Savannah, Ga., for libellant.

Abrahams, Bouhan, Atkinson & Lawrence, of Savannah, Ga., and Terriberry, Young, Rault & Carroll, of New Orleans, La., for respondent.

LOVETT, District Judge.

The libel in this case is by the Atlantic Towing Company, owner of the diesel tug "Cynthia No. 2", against the diesel tug "Egbert H" to recover for services rendered. There is little disagreement between the parties on the facts.

Shortly after one o'clock on the afternoon of May 20, 1941, in good weather the Egbert H was proceeding upstream in the Savannah river within the harbor limits of the port of Savannah with two loaded barges in tow, tandem style. As the tug approached the Seaboard Airline Railway bridge across the river, her engine was stopped to shorten the hawser attached to the barges. The hawser, 150 feet long, was shortened and the motor failed to start again after repeated efforts. It was found later a by-pass valve in the high pressure fuel pump was stuck. A heavy anchor from one of the barges was thrown over. The anchor failed to hold and the Egbert

H, with the two tows, began drifting towards the bridge. The barges cut loose and drifted under a span of the bridge, but the tide carried the Egbert H portside against the span and there she became wedged under it after about half of the pilot house was crushed. Distress signals were sounded by the tug and by the bridge-tender at the request of the master of the tug. The Cynthia No. 2, which had passed the Egbert H a short time before, going downstream, turned and hastened to the assistance of the Egbert H, being about one-fourth of a mile away at the time. When the Cynthia No. 2 reached her the pilot house and superstructure of the Egbert H were caught tightly under the span of the bridge, she was listing to starboard some 30 degrees, and water was running over her lower rails. The tide was then about half-flood and rising, and it would have risen three more feet before high tide. The Cynthia No. 2 rounded the Egbert H, backed up and a line was thrown to the master of the Egbert H and she was pulled clear of the bridge, and then carried to safety at a dock some distance away. No other assistance was available at the time. The water under the span of the bridge at this point was 26 feet deep at low tide, and the bottom of the river was to some extent covered with logs and rocks, adding to the danger of damage to the hull if the tug had sunk. If the tug had not been extricated from its situation, either it would have sunk or the superstructure would have been torn away and the tug loosened under the span. I think the former more likely. The master and some of the crew apparently thought her in imminent danger of sinking, for they had put on their life preservers. The personal effects of some of them had been removed. The operation of pulling the Egbert H clear after she was reached consumed approximately 15 minutes. The Cynthia No. 2, a steel vessel, is about three times the size of the Egbert H, which was a wooden vessel. The salvor rendered a bill for $5,000; the owner of the saved vessel offered $500.

The evidence in the case presents no serious question as to the degree of danger from which the property was rescued or as to the promptitude, skill and energy displayed in rendering the service. There was serious danger of the sinking of the saved vessel. The services were meritorious, though the risk of the salvor was slight, and the labor expanded was not great. The value of the property employed and of that saved differs in the estimation of the several witnesses, but is fixed as stated in the findings of fact. The Blackwell, 10 Wall. 1, 14, 19 L.Ed. 870; The Livietta, 5 Cir., 242 F. 195. While salvage is not to be determined as mere compensation quantum meruit but is in the nature of a bounty which the law offers from motives of public policy (1 Benedict on Admiralty, 6th Ed., Sec. 117, p. 334), each case must stand on its own facts and there is no controlling rule of thumb for measuring the award—no formula can be devised which will meet the justice of every case. The Craster Hall, 5 Cir., 213 F. 436. The per cent. basis is unsatisfactory because its application to large values of modern times would lead to obvious injustice. The Kia Ora, 4 Cir., 252 F. 507, 508. Where the values are small the same result might follow.

### Findings of Fact

1. It is my opinion that the "Egbert H" was in peril, and she would have sunk if she had not been rescued.

2. If the "Egbert H" had sunk it would have cost from $12,000 to $15,000 to raise and repair her; the actual repairs cost $975. As she stood she was of a value of approximately $25,000.

3. The value of the "Cynthia No. 2" I place at $120,000. Libellant owned and operated in like service three other vessels shown to be of the respective values of $150,000, $75,000 and $35,000. All of these tugs are equipped for salvage service.

4. The services rendered were important and of a higher character than ordinary towage.

### Conclusions

Giving due consideration to all proper elements, it is my opinion that libellant should recover the sum of $3,000 for the services rendered.

Though the libel is brought in behalf of the towing company and others interested as salvors, the crew have not appeared in their own behalf, and I understand from counsel for libellant satisfactory arrangements have been made with them, and it is, therefore, not necessary to divide the award.

Let a decree be prepared by counsel for libellant in accordance with these findings, and, on notice, presented to carry these findings into effect.