**KIMES et al. v. UNITED STATES et al.**

**THE WILLIAM M. MEREDITH.**

No. 196, Docket 22573.

United States Court of Appeals Second Circuit.

Argued April 6, 1953.

Decided July 14, 1953.

On Motion for Allowance of Interest. Aug. 11, 1953.

See also Greene v. United States, D.C. S.D.N.Y., 104 F.Supp. 667.

Richard Gyory, New York City (Silas B. Axtell, New York City, on the brief), for libelants-appellants.

Martin J. Norris, Atty., Dept. of Justice, New York City (Myles J. Lane, U. S. Atty., J. Edward Lumbard, U. S. Atty., and William H. Postner, Atty., Dept. of Justice, all of New York City, on the brief), for respondents-appellees.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an action for a salvage award by the wartime crew of one United States Government-owned-and-operated Liberty ship for services rendered in salving cargo from another such vessel traveling in the same convoy. A brief summary of the facts stipulated by the parties and found by the district court will suffice here. The S. S. Thomas G. Masaryk, carrying a lend-lease cargo of war and industrial goods and foodstuffs destined for the Soviet Union, was torpedoed and set afire in the Mediterranean Sea on April 20, 1944. While the remainder of the convoy proceeded to Alexandria, Egypt, a British destroyer shelled the Masaryk at the water line to permit sea water to extinguish the fire. A British tug then towed her to the Bay of Bomba, near Tobruk, North Africa, where she was beached in 28 feet of water. Shortly after the S. S. William M. Meredith, another merchant ship in the Masaryk's convoy, had discharged her cargo at Alexandria, her complement of 44 officers and men volunteered to return to the Bay of Bomba to help salvage the Masaryk's cargo. This mission began on April 30, 1944, and on May 2, the Meredith arrived alongside the Masaryk. Transfer of the cargo onto

the Meredith took from then until June 7, during which time members of the Meredith's crew worked primarily aboard their own ship stowing the Masaryk's cargo, occasionally boarding the Masaryk to hose down cargo taken from her hold. Also assisting in this salvage operation were 19 members of the Masaryk's crew, 50 British colonial troops aboard the Masaryk, 2 British deep sea tugs, each with a complement of about 40 officers and men, and a United States Navy armed guard crew of 12 aboard the Meredith. On June 7, transfer of the cargo having been completed, the Meredith sailed for Port Said, Egypt, where she finished unloading and cleaning on June 23, 1944, and then returned to the United States.

The crew of the Meredith[1] have now brought this suit to recover an award for their part in the salvage of the Masaryk's cargo.[2] A two-day trial was held in the district court before Judge J. Skelly Wright, whose findings of fact and conclusions of law are reported at 106 F. Supp. 682. The judge held that libelants had presented all the requisite elements of a salvage claim and set their award at $10,000. He found, however, that they had already been paid $30,000 for this salvage work, including sizable war and area bonuses and overtime allowances, and therefore held in his final conclusion of law: "Since libelants have already received $30,000 from the respondent for the work performed in the salvage operation, no additional award is due them." 106 F.Supp. at page 686. The libel was therefore dismissed.

Appealing this decision, libelants assert that, while the district judge correctly held them entitled to a salvage award, he erred in setting their compensation off against the amount awarded. They also contend that the award was in any event fixed at too low a figure. Before turning to these alleged errors we shall consider briefly respondents' contention that libelants are entitled to no salvage award whatever; for if this claim be sustained, dismissal of the libel must be affirmed even though the district court based its order on a different ground. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224, and cases there cited.

■ This is, so far as we have been able to find, the first case in which a federal appellate court has been asked to pass upon the validity of a salvage claim by the crew of a merchant vessel belonging to the United States for wartime services rendered another United States Government-owned merchant ship. That question was squarely raised, however, in The Hadley F. Brown, D.C.S.D.N.Y., 1949 A.M.C. 1181, where the court granted a small award, observing in an unreported order: "The principle of one wartime crew claiming salvage from another convoy member sounds wrong. But, of course, that should have been covered by legislation. Libelants may submit findings, with the amount blank. But I advise them now that they may not expect a large recovery." File No. A136–170. We are inclined to share the judge's reaction that a claim such as this does not fall upon enthusiastically receptive judicial ears. On the other hand, we are constrained to agree with his holding that these facts alone do not bar a salvage award. The law is well settled that salvage may be allowed despite common ownership by the United States of both the salving and salved vessels. Jacobson v. Panama R. Co., 2 Cir., 266 F. 344; The Olockson, 5 Cir., 281 F. 690; United States v. Aslaksen, 6 Cir., 281 F. 444; Rees v. United States, D.C.N.D.Cal., 134 F. 146; Burke v. Unit-

---

1. After the death of Captain Greene, in whose name the action was originally brought, his widow was substituted only to the extent of the captain's personal claim and William L. Kimes, the Chief Second Mate and second in command, was substituted on behalf of himself and the other crew members. Greene v. United States, D.C.S.D.N.Y., 104 F.Supp. 667.

2. No claim was made for salvage of the vessel, which, after salvage of her cargo, was towed to Port Said by one of the British tugs and was found to be a "total constructive loss" with no residual value.

ed States, D.C.S.D.N.Y., 96 F.Supp. 335; see also 46 U.S.C. § 727. Nor does the fact that the salvage work is performed in connection with wartime operations deny the salvors their right to an award. The Katrina Luckenbach, Ct.Cl., 1926 A. M.C. 368; The Graf Waldersee, Ct.Cl., 1927 A.M.C. 853; The Herbert L. Pratt, D.C.E.D.Pa., 1923 A.M.C. 1121.

■ No reason is apparent why the result should be otherwise where these two factors coincide, so long as the salvage operation was in fact voluntarily undertaken. That was found by the district court to be the case here, and this finding is supported by the evidence. In fact, the record shows that these libelants actually declined to perform a further salvage task and there appears no question as to their right to make this decision. We cannot therefore hold that, whatever their moral obligation to render these services for the effective prosecution of an all-out war effort libelants were under a legal duty to perform this salvage work. The Third Circuit's recent decision in Spivak v. United States, 3 Cir., 203 F.2d 881, does not suggest a contrary rule, since the single libelant there, a civilian employee of the War Department, was under orders to assist a vessel in distress in the ordinary course of his employment. Since libelants in the present case were not directly under the compulsion of government orders in undertaking this project, the fundamental public policy at the basis of awards of salvage—the encouragement of seamen to render prompt service in future emergencies—would seem to make at least some award appropriate here. See Petition of Atlantic Gulf & West Indies S. S. Lines, 2 Cir., 49 F.2d 263, 264.

While the district judge recognized this fact in holding libelants entitled to an award of $10,000, his ultimate conclusion, as we have seen, was that they had already been more than amply compensated and were entitled to no more. The compensation referred to consisted of the crew's base wages for an 8-hour day and 48-hour week, overtime of 85¢ per hour for work beyond the regular hours, and supplementary overtime of $1.05 per hour for time spent handling cargo, plus the bonuses described in the court's Finding of Fact No. 17: "Throughout the period from May 2, 1944 until June 23, 1944 when the cargo carried by the Meredith was unloaded at Port Said, Egypt, the captain and crew of the Meredith received a war bonus of 100% of base wages, a war bonus of 66⅔% of base wages, and an area bonus of $6 per day.[3] All work performed by libelants during this period was in connection with the salvage operation and for this work the libelants have already been paid approximately $30,000." 106 F.Supp. at page 685. It is not quite clear from the court's findings how this figure was arrived at and whether it includes all elements of compensation—base pay, overtime, and bonuses. From our study of the record the total compensation paid the entire crew for this 53-day period appears to be slightly over $40,000, of which about $10,000 consisted of base pay.

Whatever the exact amount of their compensation, libelants earnestly contend that they were entitled to receive at least the $10,000 award in addition thereto on the theory that wages are never part of an award and are no bar to an award. It is undoubtedly true that salvage awards have been consistently granted even where the crew had received its regular pay. Jacobson v. Panama R. Co., supra, 2 Cir., 266 F. 344; The Olockson, supra, 5 Cir., 281 F. 690; Waterman S. S. Corp. v. Dean, 4 Cir., 171 F.2d 408, certiorari denied 337 U.S. 924, 69 S.Ct. 1168, 93 L.Ed. 1732; The Centurion, D. C.D.Me., 5 Fed.Cas. page 369, No. 2,554, 1 Ware 477, 490; Bergher v. General Petroleum Co., D.C.N.D.Cal., 242 F. 967. And in the Jacobson case one of the appellants had even received extra compensation of 60¢ an hour for work done in connection with the salvage operation.

---

3. The evidence shows that the amount of the area bonus was $5 rather than $6 per day.

**64**

These cases indicate that receipt of wages is not an absolute bar to subsequent recovery of salvage, but clearly do not require the award to duplicate compensation for salvage work done and risk incurred which has already been received. Had the total sum thus far paid the crew of the Meredith covered these elements fully and in an amount sufficiently large also to serve the function of salvage awards as future inducements for rescue activities, we should have no hesitation in affirming dismissal of the libel. But the district judge himself negated such a conclusion when he found: "The salvage work performed by the libelants herein was slightly more dangerous than the work they would ordinarily be required to perform under their shipping articles. It is true that under the shipping articles libelants could be required to enter war zones and they were paid war bonuses depending on the danger involved. However, under the articles they would not ordinarily be required to take their vessel alongside a sister ship in distress and assist in taking aboard from the distressed vessel her cargo. This operation exposed libelants to danger beyond and above the requirements of the articles. It must be remembered that this salvage operation extended over a period of several weeks and took place in an isolated and unprotected spot off the northern coast of Africa one hundred miles from the enemy-held island of Malta." Finding of Fact No. 15, 106 F.Supp. at page 685.

■■ Hence libelants are entitled to an award to cover the slight additional risk found by the district court unless they had, as respondents suggest, entered into a contract to perform the salvage work for the extra compensation they would thereby earn under their shipping articles. Appealing as this theory may be in view of the very substantial sum already paid the crew for their salvage undertaking, we cannot find such an agreement in the present case. The Supreme Court has adopted a rather strict approach toward this issue, holding that "nothing short of a contract to pay a given sum for the services to be rendered, or a binding engagement to pay at all events, whether successful or unsuccessful in the enterprise, will operate as a bar to a meritorious claim for salvage." The Camanche, 8 Wall. 448, 75 U.S. 448, 477, 19 L.Ed. 397; The Excelsior, 123 U.S. 40, 49, 8 S.Ct. 33, 31 L.Ed. 75. A contract for salvage may provide for a daily or hourly wage, payable irrespective of success. The Elfrida, 172 U.S. 186, 192, 19 S.Ct. 146, 43 L.Ed. 413. But the burden of establishing the existence of such a contract is upon the respondent. The Olockson, supra, 5 Cir., 281 F. 690, 693. The record here shows no express agreement covering this salvage enterprise, and—particularly in the light of the Supreme Court's restraint of enthusiasm for such contracts—we do not think respondents have sustained their burden of showing that such an agreement should be inferred from the facts presented.

■ We come then to the final question, the amount of the award to which libelants are entitled. As might be expected, the parties make sharply conflicting claims as to the value of the cargo salved. There is also a dispute about the extent of the respondents' beneficial interest in this cargo, since it was about to be delivered to the Soviet Union where a substantial part would be consumed in the war. Without going in detail into the niceties of the law of sales and of the passage of title to goods sold as applied to the American wartime lend-lease program, it is clear that the United States did at the time of this operation have an interest in these goods—which had not yet been delivered to or accepted by the Russians and part of which were to be returned after cessation of hostilities—sufficient to make it liable for their salvage. The district court found the interest of the United States in the salved cargo to be $1,000,000. It then concluded that the total salvage award should be 10 per cent of this amount, or $100,000, in which the participation of the Meredith was fixed at 30 per cent, two-thirds of this being allocated to the

ship and her owner, and one-third to the crew. Thus the court arrived at its $10,000 award for libelants. We need not subject either the court's original $1,000,000 valuation or the percentages selected to close scrutiny, since the court was not required to use a percentage basis for arriving at its ultimate award. Post v. Jones, 19 How. 150, 60 U.S. 150, 161, 15 L.Ed. 618; The Kia Ora, 4 Cir., 252 F. 507, 509; Burke v. United States, supra, D.C.S.D.N.Y., 96 F.Supp. 335, 338. And that award will be upset only if based on erroneous principles of law or palpable misapprehensions of fact. United States v. Aslaksen, supra, 6 Cir., 281 F. 444, 448; see also The Camanche, supra, 8 Wall. 448, 75 U.S. 448, 479–480, 19 L.Ed. 397; Waterman S. S. Corp. v. Dean, supra, 4 Cir., 171 F.2d 408, 411. But where there has been such error there is no doubt of the appellate court's power and duty to modify the award. Petition of Atlantic Gulf & West Indies S. S. Lines, supra, 2 Cir., 49 F.2d 263; The Kia Ora, supra, 4 Cir., 252 F. 507.

Here accepting these findings of value, it nevertheless appears that the court's setoff of compensation against the salvage award did lead it to apply erroneous principles in arriving at the amount of that award. For the very fact of setoff presupposes that the award overlapped the prior compensation in coverage. But the court should have taken payments already made into consideration when arriving at its award so that libelants would receive total recompense sufficient to compensate for all their efforts and risks, but without undue duplication. In its Finding of Fact No. 15 quoted above, the district judge found that an award was justified by risks of mid-sea stevedoring not required by libelants' shipping articles. This same risk really provides the sole basis for an award, since libelants have already been paid handsomely in overtime and bonuses for handling cargo and being in a dangerous area. In such a case as this the court is undoubtedly entitled to fix an award with an eye to the amount already paid to libelants which they

would not have received in the absence of the salvage undertaking. That amount here is already in excess of $40,000, and an award of $10,000 for the slight additional uncompensated risk found by the district court appears excessive. We think a more appropriate award under these circumstances would be $4,500, an average of slightly over $100 for each member of the crew, bringing the total average compensation per crew member for the entire venture to $1,000.

The judgment is accordingly reversed for entry of a decree awarding libelants $4,500.

### On Motion for Allowance of Interest and for Apportionment of Award

#### PER CURIAM.

Libelants have moved for the allowance of interest on the salvage award of $4,500 decreed in their favor by this court on July 14, 1953. Respondents oppose such an award. Libelants also ask for apportionment of the award among them.

The award of interest is discretionary with the court. 3 Benedict on Admiralty 191 (6th Ed.1940); cf. Societa Commerciale Italiana di Navigazione v. Maru Nav. Co., 4 Cir., 280 F. 334, 337, cert. den. Maru Nav. Co. v. Societa Commerciale Italiana di Navigazione, 259 U.S. 584, 42 S.Ct. 586, 66 L.Ed. 1075. Nearly six years and a half elapsed between the filing of the libel and the decree. If libelants were wholly or partially responsible for a substantial part of the delay, they should not receive interest; if they were not, they may receive interest not to exceed 4 per cent. See 46 U.S.C. § 743. Respondents assert that libelants contributed to the delay by adjourning trial on three occasions. We are not in a position to resolve these issues appropriately and think they should be settled by the district court.

Apportionment among officers and crew seems "wholly factual in character," and thus for the discretion of the court. Robinson on Admiralty 748 (1939). In view of the small amount available when

divided among 44 claimants, there may well be no better provision than absolute equality, with possibly some slight addition for Captain Greene's widow and Mate Kimes. But this, too, is better to be settled by the district court after hearing than by us. There may also be further questions involving the method of payment and discharge by respondents if not all the claimants can be located, and for disposition of amounts not claimed.

On remand, the district court is therefore directed to hear and determine the issues raised by libelants' motion.